## A10A2025. WILLIAMS v. THE STATE.
### (705 SE2d 906)

MIKELL, Judge.

Miguel Henri Williams was charged with kidnapping with bodily injury (Count 1), kidnapping (Count 2), aggravated sexual battery (Count 3), two counts of aggravated assault (Counts 4 and 5), possession of cocaine with intent to distribute (Count 6), two counts of possession of controlled substances (Counts 7 and 8), and obstructing or hindering a law enforcement officer (Count 9). After a jury trial, Williams was convicted on Count 1 of kidnapping as a lesser included offense and on Counts 4 through 9. He was acquitted on the remaining counts (Counts 2 and 3). On appeal, Williams challenges the sufficiency of the evidence as to the kidnapping and obstruction charges. He also argues that the trial court incorrectly instructed the jury on the asportation element of kidnapping and failed to merge the aggravated assault in Count 4 with Count 1. We find no error and affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an

appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, we must uphold the jury's verdict.[1]

Viewed in favor of the verdict, the evidence shows that in August 2007, Chrissy Hafley, the victim, was residing with a friend in a motel in Gwinnett County. While searching for a more permanent living arrangement, Hafley met a man named "Steve," who told her they could get a place together at the Baymont Inn. Instead, Steve introduced her to Williams, who had a suite at the Baymont Inn. Hafley testified that there were several people in Williams's suite who were doing drugs and converting powder cocaine to crack cocaine. Hafley admitted that she smoked crack cocaine in Williams's suite.

Hafley testified that she left the room with a woman named "Tina" and went to another hotel, where she sat on the bed as Tina had sex with a man in the bathroom. Thereafter, they went to another hotel where Tina left Hafley with a Caucasian man. When Tina returned, she told Hafley that they needed to return to the Baymont Inn to retrieve Hafley's bag from Williams's suite. When they arrived, the same people, who were described by Hafley as drug dealers, pimps, and prostitutes, were present in the room along with Williams. Hafley testified that her plan was to retrieve her bag and return to the hotel across the street where she had been earlier. However, she was not allowed to leave.

Hafley testified that Lisa Emerson, Williams's main prostitute, beat her with her fists when she tried to leave. Then, according to Hafley, Williams choked her from behind, hit her, pointed a gun at her back, and dragged her into the bathroom. Hafley further testified that while in the bathroom, Williams explained to her that he was a pimp; that Steve had sold her to him for $500 in exchange for drugs; and that she was not leaving, would smoke crack as instructed, and was going to prostitute for him to repay Steve's debt. Williams then turned the shower on and instructed Hafley to remove her clothes, bathed her, and inserted his fingers into her vagina without her consent.

---

[1] (Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

Tina and Emerson kept watch over Hafley until the next day. Hafley saw Williams beat Tina with a metal broom, which broke on her back.[2] Hafley drove Williams and Tina around, but Hafley did not try to flee because she was afraid of Williams, as he always carried a gun and told her that if she left, he would find and kill her.

When they returned to the Baymont Inn, Williams sent Hafley and Tina to have sex with a "John." The man paid Williams for drugs and for sex with Hafley. While spending the night with the "John," whom she told she had been kidnapped, Hafley voluntarily used crack cocaine and took pills provided to her by Williams. She called 911 the following morning. The police responded and arrested Williams when he returned to pick up Hafley.

Emerson testified that she lived with Williams at the Baymont Inn; that she was a prostitute and that he was her pimp; and that other prostitutes, Tina and Yazman, also lived there; that Williams sold drugs from his room; that Hafley had told her that she was not a prostitute; that she hit Hafley to keep her from leaving; that she saw Williams grab Hafley by the throat and force her into the bathroom; and that she saw a gun in Williams's waistband when he exited the bathroom.

1. In his first enumeration of error, Williams argues that the evidence did not support his kidnapping conviction under *Garza v. State*[3] because the state had not established the required element of asportation. In *Garza*, our Supreme Court ruled that four factors should be assessed to determine whether movement constitutes asportation:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[4]

Williams argues that the movement in the instant case was incidental to the aggravated assault committed when he used the gun to

---

[2] This act was the basis of the aggravated assault charge set forth in Count 5 of the indictment.

[3] 284 Ga. 696 (670 SE2d 73) (2008).

[4] (Citation omitted.) Id. at 702 (1). Prior to *Garza*, the law provided that the requirement of asportation was satisfied where there was movement of the victim, however slight. Id. at 698 (1). After *Garza*, the kidnapping statute was amended by the Georgia legislature. OCGA § 16-5-40. The amendment applies to crimes committed on or after July 1, 2009. Because the crime in this case occurred in August 2007, the amended statute does not apply. Rather, the standard set forth in *Garza* does.

force Hafley to the bathroom and did not increase the danger to Hafley. We disagree.

The movement of Hafley from one room to another within the hotel room, even though of minimal duration, created an additional danger to her by enhancing Williams's control over her.[5] Additionally, it was not an inherent part of the aggravated assault.[6] An aggravated assault occurs when a person assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[7] Thus, the aggravated assault was completed when Williams pointed the gun at Hafley and grabbed her around the neck. Here, the asportation occurred after the aggravated assault.[8] Accordingly, this enumerated error fails.

2. Next, Williams argues that the trial court erred when it charged the jury in accordance with the pre-*Garza* definition of asportation.

At Williams's trial, the trial court charged the jury as follows on the asportation element of kidnapping:

> Ladies and gentlemen, I charge you that to prove abduction, the State must prove the element of asportation. Asportation means carrying away. Only the slightest movement of the victim is required to constitute the necessary element of asportation. There is no minimum amount of time that an alleged victim must be held to constitute kidnapping.

Although the charge given was a correct statement of law at the time of Williams's trial in August 2008, "under our Supreme Court's [December] 2008 decision in *Garza*, the asportation required to

---

[5] See *Hill v. State*, 298 Ga. App. 677, 679 (1) (680 SE2d 702) (2009); *Bryant v. State*, 304 Ga. App. 755, 757 (1) (697 SE2d 860) (2010) (evidence established asportation where after grabbing the victim from behind and shoving a metal object into his back, the defendant forced victim from open backyard into the house, placing him in additional danger, isolating him, and exercising further control over him). Compare *Garza*, supra at 703-704 (2) (the victim's movements of falling to the floor and then rising to sit in the chair where she was bound, were of minimal duration, occurred during the course of and incidental to the victim's false imprisonment, and did not significantly increase the dangers to her over those she faced as a victim of false imprisonment or aggravated assault); *Williams v. State*, 304 Ga. App. 787, 789-790 (1) (697 SE2d 911) (2010) (insufficient evidence of asportation where defendant's movement of victims of bank robbery to area where other bank occupants were located occurred during and incidental to armed robbery and did not enhance victims' risks or defendant's control over victims).

[6] See *Hill*, supra (victim's movement not an inherent part of armed robbery where money had already been taken from the register, which completed the armed robbery).

[7] OCGA § 16-5-21 (a) (2).

[8] See *Bryant*, supra (movement of victim occurred after the defendant completed the aggravated assault by grabbing the victim and shoving a metal object into his back).

support a kidnapping conviction must consist of more than 'slight movement.' "[9] Therefore, the trial court erred in charging the jury that "the slightest movement" was sufficient to support the element of asportation. The issue, however, is whether the error in the charge deprived Williams of a fair trial.

> The standard for weighing nonconstitutional error in criminal cases is known as the "highly probable test," i.e., that it is "highly probable that the error did not contribute to the judgment." Under that test, a reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict of the jury would have been different in the absence of this error.[10]

As stated earlier, Hafley and Emerson testified that Williams forced Hafley from the hotel room into the bathroom, which was sufficient evidence of asportation under *Garza* as discussed in Division 1. We conclude, therefore, that it is highly probable that the charge that the "slightest movement" sufficiently established asportation did not contribute to the judgment.[11]

3. In his third enumeration of error, Williams argues that the trial court erred when it did not merge his conviction for aggravated assault (Count 4) with his conviction for kidnapping (Count 1). The trial court sentenced Williams to fifteen years in prison and five years probation on Count 1 and twenty years of probation on Count 4, to run consecutive to the sentence imposed on Count 1. Williams maintains that the charges should have been merged as a matter of fact. We disagree.

> In determining whether there are two separate offenses or one crime is included in the other, Georgia's courts apply the "required evidence" test. Where the same act or transaction constitutes a violation of two distinct statutory provisions, the required evidence test is whether each provision requires proof of a fact which the other does not. As the Supreme Court of Georgia stated previously, a single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute

---

[9] (Footnote omitted.) *Dixon v. State*, 303 Ga. App. 517, 520 (2) (693 SE2d 900) (2010).

[10] (Citation and punctuation omitted.) *Shirley v. State*, 259 Ga. App. 503, 505 (578 SE2d 163) (2003).

[11] See *Dixon*, supra (erroneous charge on "slightest movement" did not require new trial where victim testified that the defendant forced her from the door of a hotel room to the bed inside the room, establishing the asportation required under the *Garza* standard).

does not exempt the defendant from prosecution and punishment under the other.[12]

In the instant case, the kidnapping conviction was based on forcing Hafley into the bathroom, while the aggravated assault conviction was based on unlawfully assaulting her with a handgun. Kidnapping requires proof of asportation,[13] which aggravated assault does not. The aggravated assault did not require movement or holding the victim against her will. Therefore, the crimes do not merge as a matter of fact.[14]

4. In his last enumerated error, Williams argues that the evidence was insufficient to support the charge of misdemeanor obstruction.

In Count 9 of the indictment, Williams was charged with obstructing or hindering a law enforcement officer because he attempted to spit on an officer. Officer James Fouchia of the Gwinnett County Police Department testified as follows:

[W]hen I undid the belt Mr. Williams raked the back of his throat, as if he was gathering the phlegm off the back of his throat. He brought it to the forefront of his mouth. Mr. Williams had a white crusty foam on the corners of his mouth. And when he was about to spit this collective saliva, it was a white thick foam. I knew exactly what he was in the process of doing, he was going to spit in my face. So I redirected his face away from me and I obtained some restriction from him. He was becoming, he was obstructing me to the point where he did not want to get back into the patrol car.

Misdemeanor obstruction occurs when a person "knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties."[15] The jury was authorized to believe the officer's testimony that Williams's conduct hindered and obstructed the officer in the discharge of his duties.[16] Accordingly, this enumerated error fails as well.

---

[12] (Citation and punctuation omitted.) *Elamin v. State*, 293 Ga. App. 591-592 (1) (667 SE2d 439) (2008), citing *Williams v. State*, 293 Ga. App. 193, 195 (1) (666 SE2d 703) (2008).

[13] See *Garza*, supra.

[14] See *Williams v. State*, 295 Ga. App. 9, 15 (2) (c) (670 SE2d 828) (2008) (aggravated assault did not merge with kidnapping as a matter of fact where aggravated assault occurred before the victim was moved).

[15] See OCGA § 16-10-24.

[16] See *Gordon v. State*, 199 Ga. App. 704, 705 (2) (406 SE2d 110) (1991) ("The jury was authorized to find that defendant's spitting on the officer while refusing to identify himself was

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 1, 2011.

*Sharon L. Hopkins*, for appellant.
*Daniel J. Porter, District Attorney, Carole Cox, Assistant District Attorney*, for appellee.

---

not merely discourteous, it actually hindered and obstructed [the] [o]fficer . . . in the discharge of his official duties") (punctuation omitted). See also *In the Interest of D. J. E.*, 266 Ga. App. 807, 811 (3) (598 SE2d 108) (2004) (evidence of attempts to spit, along with other evidence, supported a felony obstruction charge).