### A11A1524. GOOLSBY v. THE STATE.
(718 SE2d 9)

MCFADDEN, Judge.

A jury convicted Terry Lee Goolsby of 13 felony counts in connection with the invasions of the homes and the rapes of S. P. and H. M. M. Six counts arise out of two separate invasions of S. P.'s

home, including one count of kidnapping with bodily injury. Seven counts arise out of an invasion of H. M. M.'s home, also including one count of kidnapping with bodily injury. Goolsby appeals only from his convictions for kidnapping with bodily injury, focusing on the asportation element of the kidnapping with bodily injury charges. He challenges the sufficiency of the evidence and the trial court's instruction to the jury as to that element.

We hold that the evidence of asportation was insufficient to sustain Goolsby's convictions for the kidnapping with bodily injury of S. P. But as to H. M. M., we find the evidence of asportation not only sufficient to sustain Goolsby's conviction, but also sufficient to render harmless any error in the jury charge. Accordingly, we reverse Goolsby's conviction for kidnapping with bodily injury of S. P. and affirm his other convictions.

Reviewing a challenge to the sufficiency of the evidence to sustain a conviction, we view the evidence in the light most favorable to the jury verdict, and the defendant no longer has a presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or evaluate witness credibility; we only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the charged offenses. *Leverette v. State*, 303 Ga. App. 849 (696 SE2d 62) (2010). Even though the evidence may be contradicted, if some evidence exists to support each necessary element of the State's case, we will uphold the jury's verdict. Id.

So viewed, the evidence established that on September 8, 2002, while S. P., a 70-year-old woman who required constant use of an oxygen tank, was sleeping on her couch, Terry Lee Goolsby broke into her home and sexually assaulted her. Goolsby fled when something startled him.

Eleven days later, S. P., after hearing suspicious noises at around 4:00 a.m., got up from her couch where she was watching television and took a few steps toward her kitchen. Goolsby stepped out of the kitchen, grabbed both of her arms near the wrists, and forcefully walked her backward a couple of steps to the couch. He pushed her down on the couch, raped her, and subsequently fled.

At 4:00 a.m. on December 21, 2002, in the same mobile home community where S. P. lived, H. M. M. awoke to a loud noise. She got up to investigate and walked into her dining room where she saw Goolsby in the utility room inside her house. After seeing Goolsby, H. M. M. turned and ran for the front door, but Goolsby caught her from behind and pulled her away from the door. H. M. M. struggled to free herself. Goolsby attempted to tie H. M. M.'s hands together with a string as he was pulling her away from the door toward her bedroom. When H. M. M. clung to another door, Goolsby pulled out

a knife, held it to her back, and beat her until she let go. Goolsby eventually tied H. M. M.'s hands in front of her and forced her into her bedroom. Once in the bedroom, he put her on the bed where he raped her. Following the attack, H. M. M. was able to convince Goolsby that she needed to go to the hospital, and he let her leave.

DNA evidence established that Goolsby had sexual contact with both victims. Furthermore, fingerprints lifted from a glass in H. M. M.'s home matched Goolsby's fingerprints, and H. M. M. picked him out of a live lineup as the person who raped her.

On April 2, 2003, Goolsby was indicted on charges of criminal attempt to commit rape, burglary, and sexual battery for his attack on S. P. on September 8, 2002. For his attack on S. P. on September 19, 2002, Goolsby was indicted on charges of burglary, rape, and kidnapping with bodily injury (Count 6). For the incident with H. M. M. in December 2002, Goolsby was indicted on charges of kidnapping with bodily injury (Count 7), rape, aggravated assault, burglary, aggravated sodomy, possession of a knife during the commission of a felony, and sexual battery. Goolsby was convicted on all counts. In October 2004, he received an aggregate sentence of life plus 45 years, including multiple concurrent and consecutive life sentences. Goolsby filed a motion for a new trial in November 2004. He was twice appointed new counsel; his current appellate counsel was appointed in September 2010. Goolsby's amended motion for a new trial was denied in March 2011. This timely appeal followed.

1. Goolsby contends that the evidence of asportation is insufficient to sustain his conviction of kidnapping S. P. He relies on *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), which changed the law as to that element of kidnapping, noting that his appeal was in the "pipeline" when *Garza* was handed down. We agree and reverse Goolsby's conviction on Count 6.

"A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." OCGA § 16-5-40 (a). For a kidnapping conviction, the State must show that the defendant has "abducted" or "stolen away" the victim. Id. In other words, the State must prove an unlawful movement, or asportation, of the victim has occurred against his or her will. *Brashier v. State*, 299 Ga. App. 107, 109 (2) (681 SE2d 750) (2009).

(a) According to state law at the time of Goolsby's crimes in 2002 and his conviction and sentencing in 2004, the State could establish the element of asportation with proof of any movement of the victim, however slight. See *Norman v. State*, 269 Ga. App. 219, 221 (1) (603 SE2d 737) (2004); *Griggs v. State*, 264 Ga. App. 636, 639 (592 SE2d 168) (2003); *Jackson v. State*, 255 Ga. App. 279, 281 (1) (564 SE2d 865) (2002). In 2008, however, our Supreme Court decided *Garza*,

supra, and established a four-part test to determine whether movement of the victim constitutes asportation:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

Id. at 702 (1). The purpose of the test is to determine

> whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.

(Citation omitted.) Id.

Although the Georgia legislature has since amended the kidnapping statute to re-establish the rule that slight movement is sufficient proof of kidnapping as long as the movement was not incidental to another crime, that amendment applies to crimes committed on or after the revision's effective date of July 1, 2009. See OCGA § 16-5-40 (defining kidnapping); Ga. L. 2009, p. 331, § 1 (altering the definition of kidnapping); see also *Tate v. State*, 287 Ga. 364, 365-366 (1) (a) (695 SE2d 591) (2010); *Dixon v. State*, 300 Ga. App. 183, 184 (1), n. 3 (684 SE2d 679) (2009). Because Goolsby's case was on direct review or not yet final when the Supreme Court of Georgia decided *Garza*, it was in the pipeline when *Garza* was handed down, and we apply the *Garza* test to determine whether the movement of the victim sufficiently establishes the element of asportation. See *Taylor v. State*, 262 Ga. 584, 586 (3) (422 SE2d 430) (1992); *Grimes v. State*, 297 Ga. App. 720, 722 (678 SE2d 167) (2009).

(b) Applying the four-factor *Garza* test to Goolsby's attack on S. P., we find the evidence insufficient to establish asportation. The duration of the movement was minimal. When Goolsby grabbed S. P. in front of her kitchen, he forced her back "just a few steps" to her couch. Even though the movement occurred before the actual rape, it was movement incidental and in furtherance of the rape. In *Garza*, our Supreme Court expressly rejected a previous standard under which movement "designed to better carry out the criminal activity" was sufficient to sustain a kidnapping conviction. Id. at 701. Here, the movement of the victim was not a necessary element of the crime

of rape, but it allowed Goolsby to exercise control over S. P. during his conduct of the rape and was, therefore, an inherent part of the rape. See *Williams v. State*, 304 Ga. App. 787, 790 (1) (697 SE2d 911) (2010) (asportation proven where movement of victims during a bank robbery did not isolate the victims, but rather allowed defendant to simultaneously confine and exercise control over the victims during the conduct of the armed robbery). Finally, the movement itself presented no significant danger to the victim independent of the danger posed by the rape itself because nothing changed in regard to S. P.'s isolation or potential rescue as a result of the movement to the couch. So, the movement in question was not in the "nature of the evil the kidnapping statute was originally intended to address." *Garza*, supra at 702. As the movement does not establish the element of asportation under the *Garza* test, Goolsby's conviction under Count 6 for kidnapping with bodily injury as it pertains to S. P. must be reversed. See *Escoffier v. State*, 303 Ga. App. 317, 318 (693 SE2d 569) (2010) (evidence of asportation insufficient where defendant used a knife to order the victim from the driver's seat to the passenger's seat in order to get in the car and steal it, movement of the victim occurred during the commission of the separate offense of hijacking a motor vehicle and did not significantly increase the danger to the victim independent of the underlying offense); *Moore v. State*, 301 Ga. App. 220, 229 (7) (b) (687 SE2d 259) (2009) (where defendant forced the victim's car off a dark, rural road at 4:00 a.m., pulled her out of the car, dragged her into a ditch, and sexually assaulted her, movement of the victim did not significantly increase the danger to her); *Rayshad v. State*, 295 Ga. App. 29, 33-34 (1) (b) (670 SE2d 849) (2008) (reversing one of defendant's two kidnapping convictions because there was no evidence that the movements significantly enhanced the danger the victim already faced during the commission of the aggravated assault or armed robbery crimes).

2. Goolsby also contends that the evidence is insufficient to sustain his conviction on Count 7, kidnapping with bodily injury of H. M. M. We disagree. After assessing the evidence of the attack on H. M. M. under the *Garza* standard as set forth in Division 1, supra, we conclude that the evidence was sufficient to establish the asportation element of the crime of kidnapping with bodily injury. Therefore, we affirm Goolsby's conviction on Count 7.

Applying the four factors to the evidence here, Goolsby's movement of H. M. M. from the front door, through the house, and into her bedroom establishes the element of asportation. Although the record does not establish the duration of the movement, in cases where the *Garza* standard applies, not all four factors must be met to establish the element of asportation. *Hammond v. State*, 289 Ga. 142 (710 SE2d 124) (2011) (citing *Henderson v. State*, 285 Ga. 240, 245

(5) (675 SE2d 28) (2009)). In fact, asportation has been established on the basis of only two of the *Garza* factors shown. See *Tate*, supra at 366 (1) (a) (asportation found because movement was not an inherent part of the offense and created an additional danger to the victim).

Considering the second and third factors, the movement of H. M. M. from the front door to the bedroom did not occur during the commission of the rape or the aggravated assault, and it was not an inherent part of either the rape or the aggravated assault. The movement happened before and was separate from the rape. Moreover, Goolsby did not continue to assault H. M. M. after he pulled her to the back bedroom; he assaulted her to subdue her, then forced her into the bedroom and onto the bed. See *Dixon v. State*, 303 Ga. App. 517, 519 (1) (693 SE2d 900) (2010) (holding that movement consisting of the assailant blocking the victim's escape from the hotel room and pulling her into the room and to the bed was not an inherent part of either the aggravated assault with a razor to the victim's throat while on the bed or the subsequent rape); compare *Hargrove v. State*, 299 Ga. App. 27, 30 (1) (681 SE2d 707) (2009) (holding that movement of victim from one room into another did not constitute asportation because defendant had not completed his attack and continued to assault victim once he dragged her into the other room).

Finally, the movement created a significant danger to H. M. M. independent of the danger posed by the rape or the aggravated assault. The movement of H. M. M. enhanced Goolsby's control over her and isolated her from protection or potential rescue. Before Goolsby managed to pull H. M. M. into her bedroom, H. M. M. was at the front door where she could have made her escape or alerted her neighbors to provide help. See *Henderson*, supra at 244-245 (the movement of the victims created an additional danger to the victims by enhancing the gunmen's control over them and isolating them from protection or rescue).

Accordingly, the evidence was sufficient to sustain Goolsby's conviction of kidnapping with bodily injury of H. M. M., and thus Goolsby's conviction is affirmed.

3. Goolsby's final enumeration of error is that the trial court erred in instructing the jury on asportation contrary to *Garza*. Goolsby's counsel did not object to the trial court's instruction on asportation. But "[b]ecause *Garza* must be applied retroactively, [Goolsby] is entitled to a jury instruction consistent with that rule." *Hammond*, supra at 144 (2).

The trial court instructed the jury that only the "slightest movement" was necessary to constitute asportation, which was a correct statement of law at the time of Goolsby's trial, see *Dixon*, supra, 303 Ga. App. at 520 (2), but did not comport with *Garza*.

Nevertheless, the error was harmless. We have reversed Goolsby's conviction of Count 6, the kidnapping of S. P. So, the erroneous jury charge is moot as to Count 6. See *Kirt v. State*, 309 Ga. App. 227 (1) (709 SE2d 840) (2011).

As to Count 7, the kidnapping of H. M. M., the evidence of asportation was overwhelming, and any erroneous charge was harmless as well. This Court applies the "highly probable test" to weigh nonconstitutional error in criminal cases, assessing whether it is "highly probable that the error did not contribute to the judgment." *Dixon*, supra, 303 Ga. App. at 521 (2). Under that standard, a reversal of a conviction due to an erroneous jury charge is not required if the evidence of guilt is overwhelming and there is no reasonable probability that the jury's verdict would have been different without the error. Id.

The evidence of Goolsby's guilt is overwhelming. He was identified by both victims and by DNA and fingerprint evidence. H. M. M.'s testimony provided the only narrative in evidence of the assault upon her. As detailed in Division 2 of this opinion, that narrative clearly establishes asportation.

*Judgment affirmed in part and reversed in part. Andrews, J., concurs. Phipps, P. J., concurs in Division 1 and in the judgment.*

DECIDED SEPTEMBER 13, 2011.

*Sharon L. Hopkins*, for appellant.
*Daniel J. Porter, District Attorney, James M. McDaniel, Samantha Routh, Assistant District Attorneys*, for appellee.

