# FIRST DIVISION
## ELLINGTON, C. J.,
## PHIPPS, P. J., and DILLARD, J.

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**November 27, 2012**

# In the Court of Appeals of Georgia

A12A0965. HOLDER v. THE STATE.                          PH-037 C

PHIPPS, Presiding Judge.

Walter James Holder was convicted of burglary,[1] four counts of kidnapping,[2] four counts of armed robbery,[3] and possession of a firearm during the commission of a felony.[4] On appeal, Holder contends that: (1) the evidence was insufficient to support his convictions; (2) the trial court erred in its charge to the jury; and (3) he

---

[1] OCGA § 16-7-1 (a) (We apply the 2010 version of OCGA § 16-7-1, in effect at the time of the crime; OCGA § 16-7-1 was amended, "effective on July 1, 2012, and shall apply to offenses which occur on or after that date. Any offense occurring before July 1, 2012, shall be governed by the statute in effect at the time of such offense. . . ."; Ga. L. 2012, p. 899, 949, § § 3-1, 9-1).

[2] OCGA § 16-5-40 (a).

[3] OCGA § 16-8-41 (a).

[4] OCGA § 16-11-106 (b).

received ineffective assistance of trial counsel. Because we find that the evidence was insufficient to support the conviction on one of the kidnapping counts, we reverse that conviction. We affirm the convictions on the remaining counts.

1. When an appellant challenges the sufficiency of the evidence to support the conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt."[5]

So viewed, the evidence showed that for about two weeks before March 28, 2005, Holder had discussions with Antoine Strickland and Douglas Taylor about robbing Justin Patterson; it was rumored that Patterson had been showing off large amounts of money. Strickland and Taylor lived together. On March 28, 2005, Strickland picked up Holder and brought him back to his and Taylor's residence. From there, Strickland called Patterson and arranged a meeting at a gas station to conduct a marijuana sale. But the true purpose of the meeting was to determine where Patterson lived.

---

[5] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979) (citation and emphasis omitted).

2

Holder (by himself) drove Taylor's vehicle and met Patterson and Eric Gillespie at the gas station. Patterson walked over to the vehicle Holder drove, and conducted the drug transaction; afterwards, Patterson and Gillespie went back to Gillespie's residence, and Holder followed them there, went inside with them, and smoked marijuana with them. Ten minutes later, Holder left and went back and indicated to Taylor that he had learned where Patterson would be that night. Holder, Strickland, Taylor, and a fourth individual went shopping for bandanas and duct tape; they already had a pistol, and, while they were out they also acquired a shotgun.[6]

After Holder had left Gillespie's residence, the following individuals remained at the residence: Gillespie, Patterson, Roneisa Brown (Gillespie's girlfriend) , and Stephanie Johnson (Patterson's girlfriend). Brown had fallen asleep in a bedroom; Patterson and Johnson were in another bedroom. Gillespie, who had gone to bed, got back up, and while he was in the living room, he noticed someone walk by a window. The door was then kicked open, and a masked assailant put a shotgun to Gillespie's head.

Four masked assailants entered the residence; they wore bandanas over their faces. Gillespie was made to sit down on a chair in the living room; his head was

_____

[6] A fifth individual joined the group at some point.

duct-taped and his hands were taped together. A gun was held to his neck at all times. An assailant armed with a gun forced Brown out of the bedroom where she had been sleeping and to the living room, where he began taping Brown's face. Two armed assailants moved Patterson from a bedroom to the living room; they duct-taped his hands, feet, and head. The assailants moved Johnson from the bedroom to the living room, where they duct-taped her hands, legs, and eyes.

Once all of the victims were restrained in the living room, the assailants ransacked the house. They took money and/or property from all four victims. They took Brown's purse and money, but later returned them to her.

Patterson testified that one of the assailants wore a distinctive shirt that looked like the one Holder was wearing when Patterson had met him (Holder) at the gas station earlier that evening. The next day a law enforcement officer recovered a similar shirt during a search of Strickland's residence (which was where the assailants had gone after the crimes).

Strickland and Taylor testified that Holder had entered the residence and had participated in the planning and commission of the crimes. Holder's mother testified, however, that on March 28, 2005, Holder resided at her home, and he did not leave the house that evening.

4

(a) Holder contends that there was insufficient evidence of asportation to support the four kidnapping convictions. Citing *Garza v. State*,[7] he argues that the movement of the victims did not establish asportation.

*Garza* was decided after the crimes were committed in this case and after Holder was convicted, but while the case was pending appeal. Thus, according to the "pipeline" rule, *Garza* applies to this case.[8]

"A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will."[9] To support a kidnapping conviction, the state must show that an unlawful movement, or asportation, of the victim has occurred against his or her will.[10]

---

[7] 284 Ga. 696 (670 SE2d 73) (2008).

[8] *Hammond v. State*, 289 Ga. 142, 143-144 (710 SE2d 124) (2011) (following *Garza*, the legislature amended the kidnapping provision in OCGA § 16-5-40 to clarify the asportation requirement, but the amendment applies only to crimes committed on or after July 1, 2009); *Patterson v. State*, 312 Ga. App. 793, 795 (1) (720 SE2d 278) (2011).

[9] OCGA § 16-5-40 (a).

[10] *Ellis v. State*, 282 Ga. App. 17, 20 (1) (637 SE2d 729) (2006).

*Garza* sets out four factors that should be considered in determining whether the asportation element of kidnapping is met: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[11] However, in cases where the *Garza* standard is applicable, the Supreme Court of Georgia has not required the satisfaction of all four factors to establish that asportation occurred.[12]

> Under *Garza*, even when the movement is of minimal duration and occurs before or during the commission of other offenses, asportation has been satisfied where the movement is not an inherent part of any other offense, and the movement creates an additional danger to the victims by enhancing the control of the perpetrators.[13]

As to the kidnapping counts concerning Patterson, Johnson, and Brown, those individuals were removed from bedrooms of the residence and taken to the living

---

[11] *Garza*, supra at 702 (1).

[12] *Hammond*, supra at 144 (2).

[13] *Onumah v. State*, 313 Ga. App. 269, 270 (2) (721 SE2d 115) (2011) (citation and punctuation omitted).

6

room where they were restrained with duct tape. The movement of those individuals from bedrooms to the living room was not an inherent part of the crimes of burglary, armed robbery, or possession of a firearm during the commission of a felony, because moving them was not necessary to effect the completion of any of those crimes. Also, moving those individuals from one room to another placed them in greater danger because the asssailants' control over them was enhanced.[14]

---

[14] See *Patterson*, supra at 794-795 (1) (evidence was sufficient to establish asportation element of kidnapping convictions where moving victims from bedroom to kitchen was not an inherent part of the crimes because such movement was not necessary to effect the completion of burglary, armed robbery or aggravated assault; also, by moving them from their rooms, they were placed in greater danger because the defendant and his accomplice's control over them was enhanced); *Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009) (element of asportation was established where, although movement of victims from one room to another within a duplex was of minimal duration, such movement occurred after the offense of armed robbery had been completed and thus, was not an inherent part of the armed robbery; moreover, the movement created an additional danger to the victims by enhancing the control of the gunmen over them); *Williams v. State*, 307 Ga. App. 675, 678 (1) (705 SE2d 906) (2011) (element of asportation was established where, although movement of victim from one room to another within a hotel room was of minimal duration, it created an additional danger to victim by enhancing defendant's control over her; moreover, aggravated assault was completed when defendant pointed gun at victim and grabbed her, rendering his subsequent movement of her into the bathroom independent of that crime).

Accordingly, contrary to Holder's contention, the evidence was sufficient to establish the asportation element of the kidnapping convictions of Patterson, Johnson, and Brown.[15] Holder's convictions for kidnapping those individuals are affirmed.

(b) Applying the four-factor *Garza* test to Holder's conviction for kidnapping Gillespie, however, we find the evidence was insufficient to establish the asportation element.

The duration of the movement was minimal. Gillespie was in the living room of his residence when the assailants entered and made Gillespie sit down in the living room. The movement was incidental to the burglary and armed robbery crimes.[16] In *Garza*, the Supreme Court of Georgia expressly rejected a previous standard under which movement "designed to better carry out the criminal activity" was sufficient to sustain a kidnapping conviction.[17] Here, the movement of Gillespie into the chair was not a necessary element of the burglary or armed robbery crimes, but it allowed

---

[15] *Patterson*, supra; *Henderson*, supra; *Williams*, supra.

[16] See *Kirt v. State*, 309 Ga. App. 227 (709 SE2d 840) (2011) (pushing girl back into bathroom stall of which she was coming out insufficient evidence of asportation); *Goolsby v. State*, 311 Ga. App. 650, 652-653 (1) (b) (718 SE2d 9) (2011) (forcing victim back a few steps to her couch insufficient evidence of asportation).

[17] *Garza* at 701 (1).

the assailants to exercise control during the conduct of the burglary and armed robberies, and therefore, was an inherent part of those crimes.[18] Finally, the movement did not enhance significantly the risk Gillespie already faced as a victim of burglary and armed robbery.[19] Therefore, the movement was not "in the nature of the evil the kidnapping statute was originally intended to address."[20] As the movement did not establish asportation under the *Garza* test, Holder's conviction for kidnapping Gillespie is reversed.

(c) Holder contends that the evidence was insufficient to support the conviction for armed robbery of Brown because one of the assailants returned to Brown her purse and money. We disagree.

A person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon.[21] Under the armed robbery statute, "the

---

[18] See *Goolsby*, supra; *Williams v. State*, 304 Ga. App. 787, 790 (1) (697 SE2d 911) (2010).

[19] See *Goolsby*, supra at 654 (1) (b); *Williams*, supra, 304 Ga. App. at 790 (1); *Grimes v. State*, 297 Ga. App. 720, 722 (678 SE2d 167) (2009).

[20] *Garza*, supra at 702 (1).

[21] OCGA § 16-8-41 (a).

slightest change of location whereby the complete dominion of the property is transferred from the true owner to the trespasser is sufficient asportation to meet the statutory criterion."[22] "It is not required that the property taken be permanently appropriated."[23]

In *Bramblett v. State*,[24] the defendant kidnapped the victim and told her to drive her car to an automatic teller machine and to withdraw money for him. Nothing in the opinion suggests that the defendant ever actually touched the money; indeed the facts as recited indicate otherwise, because the robbery was foiled when the defendant left the vehicle for a short time and the victim drove away with her money.[25] This court held that, even though the victim escaped with her money, the defendant had forced her to give him the money withdrawn from the automatic teller, and this constituted

---

[22] *Sanders v. State*, 242 Ga. App. 487, 491-492 (3) (530 SE2d 203) (2000) (citation and punctuation omitted) (evidence of armed robbery sufficient where victim testified that when defendant pointed a gun at her, she froze and defendant ran out of the store dropping cigarettes he had taken).

[23] *Bramblett v. State*, 191 Ga. App. 238 (1) (381 SE2d 530) (1989) (citation and punctuation omitted); *Peoples v. State*, 184 Ga. App. 439 (1) (361 SE2d 848) (1987).

[24] Supra.

[25] Id. at 238-239.

a taking.[26] Here, Brown's purse was taken forcibly, by use of a gun, while she was immobilized with duct tape. Complete dominion of her property was transferred from her to the robbers, which was sufficient asportation to meet the statutory criterion.[27]

(d) Holder contends that the evidence was insufficient to support his convictions because the accomplice testimony of Strickland and Taylor was not sufficiently corroborated. We disagree.

A defendant may not be convicted of a felony solely on the testimony of an accomplice; the accomplice's testimony "must be supported by some independent corroborating evidence as to the identity and participation of the accused tending to connect him to the crime and leading to the inference that he is guilty."[28] However, a defendant may be convicted on the testimony of an accomplice even though the only corroboration of the testimony is the testimony of another accomplice.[29]

> [T]he sufficiency of the corroborating evidence is a matter for the jury, and if the verdict is based upon the slightest evidence of corroboration

---

[26] Id. at 239 (1).

[27] See *Sanders*, supra.; *Bramblett*, supra.

[28] See *Goldsby v. State*, 273 Ga. App. 523, 530 (7) (615 SE2d 592) (2005) (punctuation and footnote omitted).

[29] *Guyton v. State*, 281 Ga. 789, 791 (1) (642 SE2d 67) (2007).

11

connecting an accused to the crime, even if it is circumstantial, it is legally sufficient. The corroboration need not be sufficient to warrant a guilty verdict or prove every material element of the crime; it need only tend to connect and identify the defendant with the crime charged.[30]

Strickland, one of the accomplices who entered the residence, testified that Holder entered the residence with him and participated in the crimes. Taylor testified that he did not enter the residence, but that Holder did, and that Holder participated in planning the crimes. According to Taylor, it was Holder who, after completing a drug transaction with Patterson, found out where Patterson would be staying that night in order to carry out the plan to rob Patterson. Patterson and Gillespie, who were victims of the crimes, identified Holder as the individual involved in the drug transaction with Patterson before the robbery, and who had followed them back to Gillespie's residence and smoked marijuana with them. Patterson and Gillespie's testimony thus corroborated Taylor's testimony that the plan was for Holder to determine where Patterson lived.

---

[30] *Millsap v. State*, 275 Ga. App. 732, 734 (1) (621 SE2d 837) (2005) (punctuation and footnotes omitted).

Furthermore, Strickland and Taylor's roommate placed Holder with Taylor, Strickland, and the other accomplices on the night of the crimes. Strickland's testimony that he and his accomplices wore bandanas to cover their faces was corroborated by the testimony of Patterson and Johnson. And when law enforcement officers executed a search warrant at the residence where Strickland and Taylor resided, they recovered, among other things, bandanas that appeared to be new and a shirt bearing the design Patterson described on the shirts worn by Holder and one of the masked assailants.

Holder asserts that the credibility of Strickland and Taylor was highly at issue, and that Taylor's testimony conflicted with the testimony of the victims. But "[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence."[31] The evidence was sufficient to enable a rational trier of fact to find Holder guilty beyond a reasonable doubt of the crimes for which he was convicted (except for kidnapping Gillespie as discussed in Division (1)(b)).[32]

---

[31] See *Handley v. State*, 289 Ga. 786-787 (1) (716 SE2d 176) (2011) (citation and punctuation omitted).

[32] See id.

13

2. Holder claims that the trial court committed several errors in its charge to the jury. But we see no basis for reversal.

(a) Holder contends that the trial court erred in charging the jury that the asportation element of the offense of kidnapping could be supported by evidence of only the slightest movement, rather than by evidence of the *Garza* factors. This was a correct statement of law at the time the crimes were committed and at the time of Holder's trial, although it did not comport with *Garza*,[33] which was decided after Holder was convicted.

Holder correctly asserts that the rule set forth in *Garza* must be applied retroactively to his case,[34] thereby entitling him to a jury instruction consistent with that rule.[35] We must therefore determine whether the court's failure to charge the jury according to the *Garza* rule on asportation was harmless or whether it constituted reversible error.[36] "Because this case concerns nonconstitutional error, we apply the

---

[33] *Hammond*, supra at 143-144 (1).

[34] Division 1 (a), supra.

[35] See *Hammond*, supra at 144 (2); *Sipplen v. State*, 312 Ga. App. 342, 345 (2) (718 SE2d 571) (2011).

[36] *Hammond*, supra; *Sipplen*, supra.

14

highly probable test, and we ask whether it is highly probable that the error did not contribute to the judgment."[37]

Because, as explained in Division 1 (a),[38] the evidence demonstrated that asportation, as set out in *Garza*, occurred as to Patterson, Johnson, and Brown, "it is highly probable that the error of the trial court in not instructing the jury to consider the asportation element of kidnapping using the *Garza* test did not contribute to the judgment of guilt."[39] Therefore, Holder has presented no ground for reversal on the kidnapping counts concerning those individuals.[40] As we reversed the conviction for kidnapping Gillespie, we do not address Holder's complaint about the jury instruction as to that conviction.

(b) Holder contends that the trial court erred in failing to instruct the jury that identity is an element of every crime that must be proven by the state beyond a reasonable doubt.

---

[37] *Sipplen*, supra (citation and punctuation omitted).

[38] Supra.

[39] *Hammond*, supra at 145 (2); *Sipplen*, supra.

[40] *Hammond*, supra; *Sipplen*, supra.

15

Jury charges must be "correct statements of the law and, as a whole, . . . not mislead a jury of ordinary intelligence. It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error."[41]

Here, the trial court charged the jury, among other things, regarding alibi as a defense, that the presence of the defendant at the scene of the crime alleged or the defendant's involvement in the alleged crime is an essential element of the crime set forth in the indictment; and that the burden of proof rests upon the state to prove such beyond a reasonable doubt.

The court also charged that the defendant is presumed innocent until proven guilty; that the burden of proof rests upon the state to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt; that no person shall be convicted of any crime unless and until each element of the crime as charged is proved beyond a reasonable doubt; that there is no burden of proof upon the defendant whatsoever; that facts and circumstances that merely place upon the defendant a grave suspicion of the crimes charged are not

---

[41] *Williamson v. State*, 308 Ga. App. 473, 478 (2) (708 SE2d 57) (2011) (citations and punctuation omitted).

16

sufficient to authorize a conviction of the defendant; that accomplice testimony alone is not sufficient to warrant a conviction; and that the testimony of one accomplice may be supported by the testimony of another accomplice. The charge as a whole instructed the jurors that they must find beyond a reasonable doubt that Holder committed the offenses charged in the indictment.[42]

(c) Holder contends that the trial court erred by failing to include in its jury instructions on burglary and armed robbery a definition of the word "theft."

However, Holder did not request a definition of "theft," and "[i]n the absence of [a] request, the court's failure to define the meaning of terms used in the charge is not ordinarily ground for reversal."[43] Furthermore, "the word 'theft' is not . . . a technical word of art with narrowly defined meaning, but a word of general and broad

---

[42] See *Sullivan v. State*, 242 Ga. App. 613, 615 (4) (530 SE2d 521) (2000) (trial court's failure to give written charge that state must prove identity beyond a reasonable doubt not error because the trial court instructed the jury regarding the general principle of law that the jurors must find beyond a reasonable doubt that the defendant committed the offenses charged in the indictment).

[43] *Black v. State*, 167 Ga. App. 204, 207 (6) (305 SE2d 837) (1983) (citation and punctuation omitted).

connotation, covering any criminal appropriation of another's property to the taker's use."[44]

Thus, it was unlikely that the jury was not able to understand the trial court's charge that "[a] person commits the offense of Burglary when without authority, that person enters any building or dwelling house of another or into any room or any part of it with the intent to commit a theft," or the charge that "a person commits armed robbery when with intent to commit a theft that person takes property of another from the person or the immediate presence of another by use of an offensive weapon or by any replica, article or device having the appearance of such a weapon." Accordingly, the trial court did not err by failing to define the term theft.[45]

(d) Holder contends that the trial court erred by instructing the jury, in response to its question, that it could not consider the maximum possible sentence Strickland avoided by making a deal with the state to testify against Holder.

During jury deliberations, the jury sent a note to the court asking, "Is it possible for us to learn what Antoine Strickland's sentence would have been before the deal?"

---

[44] *Sharp v. State*, 192 Ga. App. 353, 354-355 (2) (b) (385 SE2d 23) (1989) (punctuation and citation omitted).

[45] See *Sharp*, supra at 355 (2) (b).

18

The court responded, "You will remember my charge to you that you will not consider punishment in any shape, form or fashion."

First, the maximum possible sentence for Strickland was not placed in evidence for the jury's consideration. Second, trial counsel did not object to the trial court's response to the jury question, thereby waiving this issue for appeal.[46]

3. Holder contends that he received ineffective assistance of trial counsel because counsel: (a) failed to object to the trial court's omission of the definition of the word "theft" as part of the burglary and armed robbery charges; and (b) failed to cross-examine Strickland and Taylor about the maximum possible sentences they avoided by making a deal with the prosecution and testifying against him.

> In order to prevail on ... a claim of the ineffective assistance of counsel pursuant to *Strickland v. Washington*,[47] a criminal defendant must demonstrate that his counsel's performance was deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the proceeding would have been different; on appeal, this [c]ourt is to accept the the trial court's factual findings and credibility determinations

---

[46] *Adcock*, supra; *Quintana-Camporredondo v. State*, 275 Ga. App. 859, 860 (1) (622 SE2d 66) (2005) (generally, an appellant's failure to object to the trial court's reply to the jury's questions waives any claim of error relating thereto).

[47] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

19

unless they are clearly erroneous, but is to independently apply the legal principles to the facts.[48]

"There is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and we will affirm the trial court's decision unless it is clearly erroneous."[49]

(a) Holder contends that his attorney erred by failing to object to the trial court's failure to define the word "theft" as part of the burglary and armed robbery charges. We disagree.

The pattern jury instructions for armed robbery and burglary do not include the definition of theft. And, as discussed above, the word theft is not a technical word of art, but rather a word of general broad connotation; thus, it is unlikely the jury was not able to understand the use of the word theft in the charges given for burglary and armed robbery. The trial court's charge was not erroneous for failing to define theft. Accordingly, Holder has failed to show that his trial counsel performed deficiently in failing to object on that basis.

---

[48] *Johnson v. State*, 290 Ga. 382, 283 (2) (721 SE2d 851) (2012) (citation omitted).

[49] *Daugherty v. State*, 291 Ga. App. 541, 544 (3) (662 SE2d 318) (2008) (punctuation and footnote omitted).

(b) Holder contends that his attorney erred by failing to cross-examine Strickland and Taylor about the maximum possible sentences they avoided by making a deal with the prosecution and testifying against Holder.

> The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel. Even though counsel is permitted to cross-examine thoroughly a testifying co-defendant about the terms of his plea agreement, it does not necessarily follow that counsel is ineffective for failing to do so.[50]

As to Taylor, the jury was informed during the state's direct examination of Taylor that he was offered immunity to testify. Defense counsel questioned Taylor on cross-examination, and solicited testimony from Taylor that, based on the immunity offer, the state said it would forego prosecuting Taylor. Holder essentially argues that he was prejudiced by his trial counsel's failure to ask Taylor more probing questions. However,

> decisions regarding whether and how to conduct cross-examinations and what evidence to introduce are matters of trial strategy and tactics and are within the exclusive province of counsel after consultation with the client. Such tactical decisions provide no grounds for reversal unless

---

[50] *Bonner v. State*, 308 Ga. App. 827, 828 (1) (a) (709 SE2d 358) (2011) (punctuation and footnotes omitted).

21

they are so patently unreasonable that no competent attorney would have chosen them.[51]

"As trial counsel obtained testimony from [Taylor] that he had substantial motivation to testify against [Holder], we cannot say that his failure to ask about specific effects of the plea deal was patently unreasonable."[52]

As to Strickland, the jury was made aware of the circumstances under which he had testified against Holder: after he pled guilty to charges and was sentenced for his involvement in the incident, and after he talked with the prosecutor and with his attorney when he had refused to answer questions at trial that would incriminate Holder. When the state called Strickland to testify, after answering a few preliminary questions – identifying himself as an individual charged with the crimes committed in this case, confirming that he had entered a plea of guilty to the crimes, affirming that he had received a 20-year sentence, and affirming that he was not the only individual who had entered the residence – Strickland was asked who, besides

---

[51] *Serrate v. State*, 268 Ga. App. 276, 278 (2) (c) (601 SE2d 766) (2004) (footnotes and punctuation omitted).

[52] *Daugherty*, supra at 544 (3) (a); *Serrate*, supra.

himself, had participated in the commission of the crimes; he refused to answer that or any more questions.

The court excused the jury from the courtroom. Strickland's attorney was called to advise Strickland. Thereafter, the jury was reseated and the state resumed its examination of Strickland. This time, Strickland implicated Holder in the commission of the crimes. On cross-examination, Strickland affirmed that he previously did not want to testify against Holder but had done so after having talked to the prosecutor and to his attorney during the court's recess. Thus, the evidence revealed to the jury Strickland's motivation to testify against Holder, and we cannot say that trial counsel's failure to ask Strickland about specific effects of any plea deal was patently unreasonable.[53]

*Judgment affirmed in part and reversed in part. Ellington, C. J., and Dillard, J., concur.*

---

[53] *Daugherty*, supra at 544 (3); *Serrate*, supra.