### A08A2406. TAYLOR v. THE STATE.
(673 SE2d 7)

ELLINGTON, Judge.

A Clayton County jury found Danielle Taylor guilty beyond a reasonable doubt of reckless driving, OCGA § 40-6-390; involuntary manslaughter, OCGA § 16-5-3; serious injury by vehicle, OCGA § 40-6-394; driving a vehicle with unsafe equipment, OCGA § 40-8-7; and failure to maintain a lane, OCGA § 40-6-48.[1] Taylor appeals from the judgment of conviction, contending that the trial court abused its discretion in admitting certain evidence, improperly changed the jury's verdict, erred in imposing her sentence outside of her presence or that of her counsel, and erred in ordering her to pay restitution. She also claims that her convictions for involuntary manslaughter and serious injury by vehicle were void and that she received ineffective assistance of counsel. For the following reasons, we reverse Taylor's conviction and sentence based upon the involuntary manslaughter charge and affirm her remaining convictions. We also vacate Taylor's sentence and remand this case to the trial court for resentencing.

Although Taylor does not directly challenge the sufficiency of the evidence supporting her convictions on the traffic violations, a brief recitation of the evidence provides some context for the analysis of her claims. Viewed in favor of the jury's verdict,[2] the evidence shows that, at around noon on January 20, 2006, Taylor was driving on Interstate 75 south of Atlanta when one of her tires became flat. Although her tire quickly disintegrated as she continued to drive, she exited onto Tara Boulevard in Morrow and drove at a high rate of speed, between 60 and 80 mph, with only three intact tires. Sparks, flames and smoke flew from the steel rim of her fourth tire, causing an extremely loud noise, and the front of the car shook "violently." Taylor weaved in and out of traffic for five to six miles and ran at least one red light while witnesses tried to alert her to the problems with her car. Eventually, Taylor's car collided with a car that was stopped at a stop light. The driver, James Oliver, suffered a fractured spine and lacerated aorta, resulting in his death. There was no

---

[1] The jury acquitted Taylor on charges of following too closely and homicide by vehicle in the first degree.

[2] Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

evidence that Taylor was under the influence of drugs or alcohol at the time of the collision.[3]

1. On appeal, Taylor claims the court erred in imposing its sentence outside of her presence. She contends that the trial court thereby violated her constitutional right to be present at every critical stage of the criminal proceedings.

The record shows that the court held a sentencing hearing and a restitution hearing, then issued a written sentencing order three days after the restitution hearing. The court never pronounced sentence while Taylor was present in open court. Instead, Taylor subsequently received a copy of the sentencing order while she was incarcerated.[4]

A defendant has the constitutional right to be present during all portions of her trial and her absence during a critical stage of her criminal proceedings, without a valid waiver of those rights, constitutes a violation of her right to be present which is presumed prejudicial and is not subject to a harmless error analysis under Georgia law. *Peterson v. State*, 284 Ga. 275, 279 (663 SE2d 164) (2008) (noting that, generally, a violation of this right "triggers reversal and remand for a new trial whenever the issue is properly raised on direct appeal") (footnote omitted). Further, "sentencing is a critical stage at which a defendant is generally entitled to be present" under the Georgia Constitution. (Footnote omitted.) *Small v. State*, 285 Ga. App. 445, 446 (646 SE2d 292) (2007). See Ga. Const. of 1983, Art. I, Sec. I, Par. XII; see also *Williams v. Ricketts*, 234 Ga. 716, 716-717 (217 SE2d 292) (1975) (unless there is only one possible sentence that the court could enter or the defendant has waived his or her right to be present for sentencing, the defendant has a constitutional right to be present in the trial court for sentencing).

Thus, since it is undisputed that the trial court denied Taylor the right to be present when it imposed its sentence, the sentence must be vacated and the case remanded for resentencing in accordance with the remainder of this opinion.

2. Taylor claims that the court erred in sentencing her to pay $547,000 in restitution to the victim's estate.[5] Taylor argues that the

---

[3] At trial, Taylor contended that she ran over debris on the highway and did not realize that her tire was flat, even though the car started shaking badly and she heard loud noises coming from her car shortly thereafter. She testified that she was having trouble controlling her car and tried to stop, but the brakes failed and she could not stop before hitting Mr. Oliver's car.

[4] The State does not dispute these facts, but argues that the court's actions were simply "unusual" and a "deviation from custom," not error. It also contends that Taylor can show no harm that resulted from the court's actions.

[5] The court found that the victim's damages amounted to $1,500,000; it then credited $953,000, which had been paid by insurance and the Crime Victims Compensation Board, to

court could not order restitution because she had already settled all civil claims with the victim's estate. The record shows that the victim's estate dismissed its claims against Taylor with prejudice after the parties settled.

> The restitution mechanism is an attempt to avoid the necessity of a separate civil action and to determine the amount of loss caused by the criminal act in the usually earlier criminal proceedings rather than in a second and more protracted civil suit. Consequently, the amount of restitution ordered may not be more than the victim's damages.

(Punctuation and footnotes omitted.) *Beall v. State*, 252 Ga. App. 138, 139 (1) (555 SE2d 788) (2001). See also OCGA § 17-14-9 (restitution may not exceed the victim's damages). OCGA § 17-14-2 (2) defines "damages" in the context of restitution as "all special damages which a victim could recover against an offender in a civil action . . . based on the same act or acts for which the offender is sentenced[.]" Thus, "the statutory scheme requires the court to determine what type of civil action could be maintained by the victim, and to determine what the proper measure of damages would be in such a civil action." (Citation, punctuation and footnote omitted.) *McMahon v. State*, 284 Ga. App. 192, 195 (3) (643 SE2d 236) (2007).

Moreover, OCGA § 17-14-6 (b) specifically provides that "[t]he ordering authority shall not order restitution to be paid to a victim or victim's estate if the victim or victim's estate has received or is to receive full compensation for that loss *from the offender* as a result of a civil proceeding." (Emphasis supplied.) Therefore, because the victim's estate settled with the insurance companies and dismissed *with prejudice* its claims against Taylor for damages arising from the collision, the estate is estopped as a matter of law from seeking any additional compensation from *Taylor* in a future civil proceeding. See *Robinson v. Stokes*, 229 Ga. App. 25, 27 (1) (493 SE2d 5) (1997) ("a voluntary dismissal with prejudice operates as a judgment on the merits for purposes of res judicata") (citation omitted). Thus, pursuant to OCGA § 17-14-6 (b), the court was not authorized to order Taylor to pay the estate restitution. The restitution order must be reversed.

3. Taylor argues that her conviction for involuntary manslaughter is void, because, under Georgia law, a homicide caused by reckless driving must be prosecuted as vehicular homicide. *State v. Foster*,

---

reach the restitution amount of $547,000.

141 Ga. App. 258, 260 (1) (233 SE2d 215) (1977); see *Williams v. State*, 171 Ga. App. 546, 547 (1) (320 SE2d 389) (1984) (accord). In a related argument, she also contends the court erred when it sentenced her to fifteen years imprisonment (five to serve) for homicide by vehicle in the first degree, even though the jury had acquitted her of that offense.

The record shows that the State charged Taylor in Count 5 with homicide by vehicle in the first degree, alleging that she caused the victim's death without malice aforethought by committing an act of reckless driving.[6] The State also charged Taylor in Count 6 with involuntary manslaughter,[7] alleging that she unintentionally caused the victim's death "while in the commission of the unlawful act of Reckless Driving." The jury acquitted Taylor on Count 5, but found her guilty on Count 6. In the judgment order, however, the court wrote the following: "Court finds that Count VI is actually [an] indictment for first degree vehicular homicide." Pursuant to that finding, the court sentenced Taylor to 15 years, the maximum sentence for homicide by vehicle in the first degree.[8] The maximum sentence for involuntary manslaughter is ten years.[9]

On appeal, the State concedes that it was not authorized to prosecute Taylor under the involuntary manslaughter statute for a death resulting from reckless driving. The State contends, however, that the involuntary manslaughter count was simply mislabeled and was, in fact, a second charge of homicide by vehicle in the first degree.[10] Thus, under the State's argument, the indictment charged Taylor with *two* counts of homicide by vehicle in the first degree based upon the same act of reckless driving and involving the same victim. As shown above, though, the jury *acquitted* Taylor of one charge while also finding her guilty in another count of the same (but allegedly mislabeled) offense. Then, even though the jury had

---

[6] See OCGA §§ 40-6-390 (a) ("Any person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving."); 40-6-393 (a) ("Any person who, without malice aforethought, causes the death of another person through the violation of . . . Code Section 40-6-390 . . . commits the offense of homicide by vehicle in the first degree and, upon conviction thereof, shall be punished by imprisonment for not less than three years nor more than 15 years.").

[7] See OCGA §§ 16-5-3 (a) ("A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony. A person who commits the offense of involuntary manslaughter in the commission of an unlawful act, upon conviction thereof, shall be punished by imprisonment for not less than one year nor more than ten years."); 40-6-390 (b) (reckless driving is a misdemeanor offense).

[8] See footnote 6, supra.

[9] See footnote 7, supra.

[10] See *State v. Edwards*, 236 Ga. 104, 107 (222 SE2d 385) (1976) ("[T]he offense characterized in an indictment is determined, not by the name given therein, but by the criminal acts therein alleged to have been committed.") (citations omitted).

specifically acquitted Taylor of homicide by vehicle in the first degree, the trial court imposed a sentence for that crime.

We conclude that the court erred in entering judgment and imposing a sentence on Count 6 under the guise that the jury had found Taylor guilty of homicide by vehicle in the first degree instead of involuntary manslaughter, when the jury had specifically acquitted her on a charge of homicide by vehicle in the first degree based upon the same act and against the same victim. Thus, Taylor's conviction and sentence for homicide by vehicle in the first degree must be reversed.[11] See generally *Turner v. State*, 283 Ga. 17, 20-21 (2) (655 SE2d 589) (2008) (reversing the court's judgment on a jury verdict finding the appellant guilty of felony murder and aggravated assault because the jury also found the appellant not guilty of a malice murder charge based upon the same act against the same victim after it concluded that the appellant's act of shooting the victim was justified; the Court concluded that the situation fell within an exception to the abolition of the inconsistent verdict rule because the jury's finding that the shooting of the victim was justified precluded any conviction based on that conduct).

4. Taylor claims that her conviction for serious injury by vehicle is void. She contends that the conviction cannot stand because the victim did not survive the collision but, instead, died instantaneously from his injuries.

Under OCGA § 40-6-394, a person commits serious injury by vehicle when he or she, without malice,

> cause[s] bodily harm to another by depriving him of a member of his body, by rendering a member of his body useless, by seriously disfiguring his body or a member thereof, or by causing organic brain damage which renders the body or any member thereof useless through the violation of Code Section 40-6-390 [(reckless driving)].

At trial, the State presented expert testimony that the victim "died as a consequence of blunt force injury to his chest, which fractured his vertebra, his backbone, and lacerated his aorta, which is the large blood vessel that carries your blood from your heart to your body."[12] Although the evidence did not conclusively show

---

[11] We note that, because the jury acquitted Taylor of vehicular homicide based upon reckless driving, the State is precluded from re-indicting her for vehicular homicide based upon the same act, as that would subject her to double jeopardy. See *Shepherd v. State*, 280 Ga. 245, 251 (3) (626 SE2d 96) (2006) (the Double Jeopardy Clause forbids a second prosecution for the same offense after acquittal).

[12] The court admitted this testimony over the objection of defense counsel. See Division

whether the victim died immediately upon impact or whether he survived the initial impact but died shortly thereafter after hemorrhaging internally, the resolution of this issue was for the jury. *Jackson v. Virginia*, 443 U. S. at 319 (III) (B) (it is the function of the jury, not this Court, to resolve conflicts in the evidence and to draw reasonable inferences from the evidence). We find the evidence was sufficient to prove that Taylor's reckless driving caused the victim serious bodily harm and to support a conviction under OCGA § 40-6-394. Id.

Because the trial court merged this conviction with Taylor's conviction for homicide by vehicle, however, and because this Court has reversed that conviction, the trial court is directed to resentence Taylor for serious injury by vehicle upon remand.

5. Taylor contends the court erred in admitting the testimony of a medical examiner who did not perform the autopsy on the victim. The record shows that the medical examiner who performed the autopsy was not available during the trial, and trial counsel admitted that he did not ask for a continuance because he hoped that the examiner's absence would make the autopsy evidence inadmissible at trial. The State notified the court that it intended to call one of the examiner's colleagues, also a medical examiner, and the court overruled trial counsel's objection. Counsel spoke with the examiner during a recess before the examiner took the stand.

The trial court then admitted a redacted[13] copy of the autopsy report as a business record over the defense's objection. The medical examiner opined that, based upon his review of the autopsy report, he concluded the victim suffered a broken spine and lacerated aorta which led to his death.

> Generally, an expert cannot voice an opinion based upon facts not within the expert's personal knowledge or based upon observations or reports not admitted into evidence; however, an expert may give an opinion based upon facts personally observed by the expert and upon data collected by another and personally observed or reviewed by the expert.

(Citation omitted.) *Turner v. State*, 273 Ga. 340, 344 (4) (541 SE2d 641) (2001) ("The trial court did not allow impermissible hearsay

---

5, infra.

   [13] "[T]hose portions of business records which contain conclusions, opinions, estimates and impressions of third parties who are not before the court are not admissible under [the business records] exception to the hearsay rule." (Citations omitted.) *Malcolm v. State*, 263 Ga. 369, 370 (3) (434 SE2d 479) (1993).

when it permitted the current medical examiner to read aloud the 1979 autopsy report as redacted since the report had been admitted under the business records exception to the rule against the admission of hearsay.") (footnote omitted).

Thus, there was no abuse of discretion in this case. See *Rogers v. State*, 285 Ga. App. 568, 570 (2) (646 SE2d 751) (2007) (admission of evidence is a matter resting within the sound discretion of the trial court, and the appellate courts will not disturb the exercise of that discretion absent evidence of its abuse).

6. Taylor complains that the court erred in admitting tapes of 911 calls when the State failed to provide them to the defense prior to trial after she had opted into reciprocal discovery under OCGA § 17-16-1 et seq. The record shows, however, that the State notified Taylor in May 2007 (nine months before trial) that items that are discoverable under OCGA § 17-16-4 were available for inspection.[14]

Moreover, at trial, the State tendered only one recording of a 911 call, and counsel expressly stated that he had no objection to the admission of that call. Thus, Taylor waived any error in admitting the recording. See *Aalon v. State*, 247 Ga. App. 37, 40 (3) (543 SE2d 78) (2000) ("By failing to object at trial, [the defendant] cannot raise the issue on appeal.") (citation and punctuation omitted).

7. Taylor contends the trial court abused its discretion when it reopened closing arguments after it re-charged the jury, alleging that it confused the jury. Taylor failed to enumerate this ruling as error, however, so it is waived. See *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999) ("The appellate court is precluded from reviewing the propriety of a lower court's ruling if the ruling is not contained in the enumeration of errors.") (citations omitted).

8. Taylor argues that her trial counsel provided ineffective assistance. She complains that counsel failed to file a demurrer to Counts 2, 6 and 7 of the indictment or to seek a directed verdict on those counts.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient perfor-

---

[14] See OCGA § 17-16-4 (a) (3) (A) ("[T]he prosecuting attorney shall, no later than ten days prior to trial, or as otherwise ordered by the court, permit the defendant at a time agreed to by the parties or ordered by the court to inspect and copy or photograph . . . audio and visual tapes . . . which are within the possession, custody, or control of the state or prosecution and are intended for use by the prosecuting attorney as evidence in the prosecution's case-in-chief or rebuttal at the trial."). Notably, the State also notified Taylor in November 2007 (three months before trial) that it expected to call a "911 call taker employed by the Clayton County Communications Center" at trial, and provided the names of five potential witnesses.

mance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001).

(a) Taylor's allegation that trial counsel was ineffective for failing to file a demurrer or to move for a directed verdict on Count 6 (involuntary manslaughter/homicide by vehicle) is moot given our decision in Division 3, supra.

(b) As for Count 2 (reckless driving), Taylor has conceded that the evidence supports her conviction, and she has failed to show that trial counsel's failure to file a demurrer or to move for a directed verdict on this count constituted ineffective assistance.

(c) Pursuant to our decision in Division 4, supra, there was no basis for a demurrer or directed verdict on Count 7 (serious injury by vehicle). Therefore, this claim of ineffective assistance must fail.

(d) Taylor also contends that trial counsel was ineffective because he failed to listen to the 911 tape prior to trial. Pretermitting whether counsel's failure to do so constituted deficient performance, given the overwhelming evidence supporting Taylor's convictions, particularly the eyewitness testimony, Taylor has failed to show that there is a reasonable probability that the outcome of her trial would have been different but for counsel's error. Thus, this ineffectiveness claim must fail. See *Venegas v. State*, 285 Ga. App. 768, 770 (1) (647 SE2d 422) (2007) (in order to prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that counsel's errors prejudiced the defense).

*Judgment affirmed in part and reversed in part, and sentence vacated. Case remanded for resentencing in accordance with this opinion. Miller, C. J., and Blackburn, P. J., concur.*

DECIDED JANUARY 6, 2009 —
RECONSIDERATION DENIED JANUARY 27, 2009 —

*Brenda J. Bernstein*, for appellant.
*Jewel C. Scott, District Attorney, Billy J. Dixon, Assistant District Attorney*, for appellee.