**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 13, 2014**

# In the Court of Appeals of Georgia

A14A1128. BAXTER v. THE STATE.

MCFADDEN, Judge.

After a jury trial, Jared U. Baxter was convicted of one count of rape, one count of kidnapping, three counts of burglary, three counts of terroristic threats, and one count of peeping tom. He appeals, arguing that his sentence of life without the possibility of parole for the rape conviction is illegal; that trial counsel was ineffective; and that the state failed to prove asportation as required for the kidnapping conviction.

As the state concedes, the sentence of life without the possibility of parole for the rape conviction is illegal. Accordingly, we vacate that sentence and remand for resentencing. We reject Baxter's other claims. Baxter argues that trial counsel was ineffective for failing to object to the admission of certain evidence. We find that

some of the evidence was admissible and trial counsel had strategic reasons for failing to object to the other evidence. We also find that the state sufficiently proved asportation. We therefore affirm Baxter's convictions.

1. *The evidence was sufficient to support the convictions*.

Viewed in the light most favorable to the verdict, *Morris v. State*, 322 Ga. App. 682 (1) (746 SE2d 162) (2013) (citation omitted), the evidence shows that on June 29, 2008, the first victim woke up in her bedroom to find Baxter putting his hand on her mouth threatening to kill her if she screamed. When she fought back, Baxter fled through the back door. The victim called the police and left her apartment. When she returned, she discovered that her television was missing. The police later recovered the television in Baxter's apartment while executing a search warrant.

Less than a week later, Baxter forced his way into the apartment of the second victim. He threatened to slit her throat if she screamed. Baxter raped the victim, ejaculated on her back, and then made her take a shower. The victim described her assailant as wearing a mask with eye holes cut out of it and a long-sleeved t-shirt. Investigators found a similar mask and a long-sleeved t-shirt in Baxter's storage closet.

On July 14, 2008, the third victim was watching television on her laptop. She heard a sound and went to check that the door was locked, when Baxter forced his way into her apartment, covered her mouth with his hand, and threatened to slit her throat. Baxter told the victim to remove her shirt, but she fought him and he retreated. The victim described her assailant as wearing a black ski mask with white stripes above the eyes, the same kind of mask found in Baxter's storage closet.

A few days later, the sheriff's office set up a surveillance operation at the apartment complex. At around 5:20 in the morning, a deputy saw an individual, who was later identified as Baxter, drive up and park in a bright blue Saturn, take a black, cloth object from the trunk of the car, and place it in his back pocket. Baxter looked into the back window of an apartment. He heard a noise, thought someone had seen him peeping into the window, and fled in his car, pursued by two undercover Richmond County deputies. Baxter was eventually stopped in South Carolina. Baxter admitted looking into the window, but he said he was spying on his girlfriend. But his girlfriend did not live in that apartment; instead that apartment belonged to the fourth victim.

Baxter testified at trial. He admitted being a peeping tom and admitted peeping into the window of the fourth victim.

Although Baxter did not raise the issue, we find that the evidence at trial was sufficient to support the convictions of rape, burglary, terroristic threats, and peeping tom beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). As discussed in more detail in Division 4, we also find that the evidence was sufficient to support the kidnapping conviction beyond a reasonable doubt.

2. *Baxter is entitled to re-sentencing on the rape conviction*.

Baxter argues that, under the circumstances of this case, he could not be sentenced to life without the possibility of parole for the rape conviction. See *Merritt v. State*, 286 Ga. 650 (690 SE2d 835) (2010); *State v. Velazquez*, 283 Ga. 206 (657 SE2d 838) (2008). The state, to its credit, concedes the point. Accordingly, we vacate Baxter's sentence on the rape conviction and remand for re-sentencing.

3. *Baxter did not receive ineffective assistance of trial counsel.*

Baxter argues that he received the ineffective assistance of trial counsel because trial counsel did not object to the admission of certain evidence seized in searches of his apartment, car, and computer. To prevail on his claim of ineffective assistance of counsel, Baxter was required to show both deficient performance by trial counsel and actual prejudice. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104

4

SCt 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985). If Baxter "fails to meet his burden of proving either prong, then we do not need to examine the other prong." *Works v. State*, 301 Ga. App. 108, 114 (7) (686 SE2d 863) (2009) (citation omitted).

Baxter argues that trial counsel was ineffective for failing to object to the admission of evidence seized during the execution of a search warrant for his apartment. Although he does not state it explicitly, his argument seems to be based on the premise that by failing to object to the admission of this evidence, trial counsel rendered defective performance because he waived the challenges to the admissibility of the evidence that he had asserted in his motion to suppress. However, "*[f]ailing* to object at trial is not a waiver of the motion to suppress grounds, [although] *affirmatively stating* there is no objection in effect concedes the point." *Dyer v. State*, 233 Ga. App. 770, 771 (505 SE2d 71) (1998) (citations omitted; emphasis in original). Regardless of whether counsel failed to object to this evidence or whether he affirmatively stated there was no objection, Baxter cannot show ineffective assistance of counsel because the evidence either was admissible or was not challenged because of a reasonable trial strategy.

5

(a) *Counsel's failure to object to the admission of evidence seized from Baxter's apartment*.

Baxter argues that the warrant to search his apartment was not supported by probable cause. Our Supreme Court, in *State v. Palmer*, 285 Ga. 75 (673 SE2d 237) (2009), described the standards applicable to the various levels of judicial scrutiny involved in the warrant process as follows:

> The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

> The trial court may then examine the issue as a first level of review, guided by the Fourth Amendment's strong preference for searches conducted pursuant to a warrant, and the principle that substantial deference must be accorded a magistrate's decision to issue a search warrant based on a finding of probable cause.

> A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the

6

resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

Our appellate courts will review the search warrant to determine the existence of probable cause using the totality of the circumstances analysis. . . . The duty of the appellate courts is to determine if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant. . . . In reviewing the trial court's grant or denial of a motion to suppress, we apply the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review, keeping in mind that a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court.

Id. at 77-78 (citations and punctuation omitted).

Viewed with theses principles in mind, we turn to the warrant in this case. The warrant authorized the search of Baxter's apartment for items that included a 35-inch Samsung television, a ski mask, gray gloves, a red long-sleeve shirt, and electronically stored material including material on computers and external hard drives. The warrant was supported by a lengthy affidavit in which the affiant related that on June 29, 2008, at 5:25 a.m., the first victim reported that she awoke in her

bedroom to find a man with a red bandana covering his face standing at her bedroom door. The man grabbed her, placed his hand over her mouth, and threatened to kill her if she screamed. The victim was able to push the man in the chest and run out her front door. She ran to her neighbors' residence and called the police. When she returned to her apartment, she saw that her 35-inch Samsung television had been taken. That victim lived at a particular address on Iron Horse Drive.

The affiant averred that on July 3, 2008, at 1:42 a.m., the second victim reported that she was getting ready for bed, and while she was naked, entered her kitchen to get a drink. She decided to place the trash outside her back door, when a man forced his way into her residence. The perpetrator put his hand over the victim's mouth, told her he had a knife, and threatened to cut her throat if she resisted. The perpetrator inserted his fingers into the victim's vagina and then unsuccessfully tried to penetrate her with his penis. The perpetrator made the victim kneel on the couch and then began having sexual intercourse with her. He pulled out his penis and ejaculated on her back. The perpetrator wiped off the victim's back with his shirt and then forced her to shower. He told her to stay in the bathroom as he left. The victim described the perpetrator as a white male, approximately five feet, 10 inches tall,

8

weighing 155 pounds with blue eyes, wearing blue jeans and a mask. That victim lived at another address on Iron Horse Drive.

The affiant related that on July 8, 2008, two individuals reported that on March 26, 2008 at 1:09 a.m., they had heard a noise outside their bedroom window. One of them looked out the window and saw a bald white male, approximately five feet, 10 inches tall, weighing 155 pounds standing outside their window. The man fled. One of the individuals thought that the man was familiar from the apartment complex. They also lived on Iron Horse Drive.

The affiant related that on July 14, 2008 at 1:20 a.m., the third victim reported that she was sitting by the rear sliding glass door to her apartment while she was working on her computer. She heard a scratching noise by the door and pushed open the blinds to see whether the door was locked, when a man pushed open the door. The third victim described the man as a white male, approximately five feet, 10 inches tall, weighing from 150 to 160 pounds with blue eyes, wearing blue jeans, a red long sleeve T-shirt, and a mask. The perpetrator put his hand over her mouth and threatened to slit her throat if she screamed. He told her to stand up and take off her shirt, but she ran for the front door, screaming. As she looked back, she saw the man

9

fleeing the scene out the same door he had entered. That victim lived at an address on Ridgecrest Drive.

The affiant explained that based on these facts, investigators believed that there was a serial sexual offender in the area, who had firsthand knowledge of the area from either living or working there, and that based on the information from the two individuals, the investigators believed that the perpetrator may have been conducting surveillance of his victims prior to their attacks.

The affiant described the officers' surveillance operation: On July 17, 2008 at 5:20 a.m., officers were conducting surveillance in the Iron Horse and Ridgecrest apartments from an apartment. One of the officers was monitoring video and noticed a blue Saturn Ion pull into the complex. He lost sight of the vehicle when it went out of range of the videocameras, so the officer looked out the front window of the apartment and saw a man later identified as Baxter exit the Saturn and retrieve from the trunk a cloth object, which he stuffed into his back pocket. The officer watched Baxter walk to the rear patio door of an apartment, and then look into the window, where the fourth victim was showering. When Baxter heard a noise from the officers, he fled to his vehicle and left the complex. He was stopped by South Carolina police. When asked about his presence in the Iron Horse Apartments he said he was

attempting to spy on his mistress, but gave the name of a person other than the fourth victim, who lived alone in her apartment. Baxter matched the description given by the second and third victims, and has blue eyes. Baxter lived on Ridgecrest Drive.

Under the totality of the circumstances, the magistrate had a substantial basis to determine that there was a fair probability that evidence of a crime would be found in Baxter's apartment. The police caught Baxter peeping into a woman's apartment in the area where they believed a serial sexual offender was operating, and they believed the offender was conducting surveillance on his victims prior to their attacks. Baxter matched the description of the perpetrator given by two of the victims and he lied, falsely claiming to be spying on his girlfriend.

Further, the magistrate properly allowed the police to seize the clothing and mask the victims described the perpetrator as wearing, as well as the television that the first victim reported had been stolen. OCGA § 17-5-21 (a) (1), (3). Consequently, Baxter has failed to establish that he was prejudiced by counsel's failure to object to or acquiescence in the admission of the clothing, mask, and television seized pursuant to a search of his apartment.

(b) *Counsel's failure to object to the admission of evidence seized from Baxter's camera and computers.*

11

Baxter argues that trial counsel was ineffective for failing to object to the admission of "peeping tom" images taken from his camera and computers. He asserts that the admission of this evidence violated the Fourth Amendment and that it constituted evidence of other crimes. At the motion for new trial hearing, trial counsel explained that he did not object to the admission of this evidence because he wanted to establish credibility with the jury, given that Baxter was "caught red-handed" committing the act of peeping tom. His strategy was to establish for the jury that Baxter may have been a peeping tom, but he was not a rapist. Baxter himself testified at trial that he was a peeping tom.

Baxter has not shown counsel's failure to object to the admission of this evidence amounted to a deficient performance. See *Paul v. State*, 257 Ga. App. 86, 87 (570 SE2d 399) (2002) (given overwhelming evidence of theft, trial counsel's strategy of showing state could prove robbery but not armed robbery was reasonable); see also *Mallon v. State*, 266 Ga. App. 394, 396 (2) (597 SE2d 497) (2004) (bench trial strategy of showing that evidence established lesser charged offense but not greater charged offense was reasonable). Consequently, this ineffective assistance of counsel claim fails.

4. *The state proved asportation sufficient to support the kidnapping conviction.*

12

Citing *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), Baxter argues that his kidnapping conviction must be reversed because the slight movement of the second victim solely occurred during the commission of the separate violent crimes and did not expose her to any danger independent of the danger already in progress.

In *Garza*, our Supreme Court set out four factors to determine whether the asportation element was met:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

Id. at 702 (1). After our Supreme Court's decision in *Garza*, the legislature amended the kidnapping statute, effective July 1, 2009, to provide that slight movement is sufficient to prove kidnapping as long as the movement was not incidental to another offense. *Hammond v. State*, 289 Ga. 142, 143 (710 SE2d 124) (2011). But because Baxter's acts occurred prior to the statute's July 1, 2009 effective date, *Garza* applies. Id. at n. 5. The state is not required to satisfy all four *Garza* factors in order to prove the element of asportation. *Brown v. State*, 291 Ga. 750, 753 (2) (733 SE2d 300) (2012).

13

The second victim testified that after Baxter raped her on her couch and ejaculated on her back, he made her take a shower, instructing her to wash the small of her back and her genital area. He would not allow her to close the shower curtain and he watched her shower. He became impatient with her and she was afraid of upsetting him. He eventually left the bathroom, and the victim, afraid that Baxter was still in the apartment, waited in the bathroom for about five minutes before she left to call for help.

The movement of the victim to the bathroom was not an inherent part of the rape, as that crime had already ended. "Further, moving the victim into the bathroom placed [her] in a more dangerous situation because isolating [her] made it easier for [Baxter] to maintain control over [her] and made it impossible for [her] to call for help." *Brown*, supra, 291 Ga. at 753 (2). We conclude that the state presented sufficient evidence to support the kidnapping verdict. Id. (movement of victim from front of house to back bathroom was not insignificant, was not an inherent part of other charged crimes and placed victim in more dangerous situation). Accord *Williams v. State*, 307 Ga. App. 675, 678 (1) (705 SE2d 906) (2011) (moving victim from hotel room into bathroom was sufficient asportation as it created additional danger to her by increasing defendant's control over her and was not inherent part of

14

aggravated assault); *Dixon v. State*, 303 Ga. App. 517, 519 (1) (693 SE2d 900) (2010) (pulling victim back into hotel room from hallway sufficient to prove asportation because it occurred before defendant threatened her with a razor and raped her).

*Judgment affirmed, sentence vacated in part, and case remanded for resentencing. Andrews, P. J., and Ray, J., concur.*