**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 6, 2015**

# In the Court of Appeals of Georgia

A15A1323. JACKSON v. THE STATE.

BRANCH, Judge.

Earlene Daphne Jackson appeals from a restitution order entered by the Superior Court of Toombs County requiring Jackson to pay $7,715.00 to Barry James Allen Brown, the victim of Jackson's crimes of financial identity fraud and residential mortgage fraud. Jackson contends that the evidence does not support that part of the trial court's order which requires her to compensate Brown for the time he lost from work as a result of Jackson's criminal conduct. For reasons explained more fully below, we find no error by the trial court in awarding Brown lost wages resulting from the time he lost from work because of Jackson's crimes against him, including the days Brown was required to testify at the criminal proceedings brought against Jackson. We further find, however, that the trial court erred in awarding Brown his

lost wages for the day he took off work to testify at the restitution hearing. Accordingly, we vacate the trial court's restitution order and remand for entry of a new order consistent with this opinion.

A trial court's restitution order must be based on evidence presented at a restitution hearing as to the factors set forth in OCGA § 17-14-10.[1] See OCGA § 17-14-7 (b). Thus, "[o]n appeal from an order of restitution, we review the record to determine whether a restitution award was supported by a preponderance of the evidence." *Tobias v. State*, 319 Ga. App. 320, 329 (5) (735 SE2d 113) (2012) (footnote omitted).

---

[1] OCGA § 17-14-10 (a) provides:
In determining the nature and amount of restitution, the ordering authority shall consider: (1) The financial resources and other assets of the offender or person ordered to pay restitution including whether any of the assets are jointly controlled; (2) The earnings and other income of the offender or person ordered to pay restitution; (3) Any financial obligations of the offender or person ordered to pay restitution, including obligations to dependents; (4) The amount of damages; (5) The goal of restitution to the victim and the goal of rehabilitation of the offender; (6) Any restitution previously made; (7) The period of time during which the restitution order will be in effect; and (8) Other factors which the ordering authority deems to be appropriate.

The facts in this case are undisputed and the record shows that Jackson was a friend of Brown and his wife. Sometime before the alleged crimes occurred, Jackson housesat for the couple for approximately three months while the Browns were temporarily relocated to Pennsylvania. During that time, Jackson obtained Brown's personal identification information, including his Social Security number. She thereafter used that information to obtain a mortgage loan in Brown's name from People's Bank in Lyons. The loan was used to purchase a home in Lyons, and another man posed as Brown at the closing. Brown discovered the existence of the fraudulent loan in April 2011 and reported it to authorities. Following an investigation, Jackson was indicted in July 2012 on one count of financial identity fraud and four counts of residential mortgage fraud. After Jackson was able to refinance the home and place the mortgage loan solely in her name, the State agreed to a negotiated guilty plea. Pursuant to that agreement, Jackson pled guilty to all charges. The trial court sentenced Jackson to ten years on each count, with the sentences to run concurrently and with credit for time served and the balance of the sentences to be served on probation. Additionally, under the plea agreement Jackson agreed to pay restitution in an amount to be determined by the trial court.

The trial court held a restitution hearing in September 2014, at which the State presented Brown's testimony regarding the damages he had suffered as a result of Jackson's criminal conduct. Brown testified that he is a self-employed heavy equipment mechanic who travels to job sites to perform repairs. Brown normally charges $55 per hour for his time on repairs and $1.50 per mile for his travel, and he typically works a 13 to 14 hour day. According to Brown, he spent $675 in attorney fees attempting to get the fraudulently-obtained loan off of his credit report and ensuring that he would not be held liable for the loan. He further testified that he took a total of 15 days off from work as a result of Brown's conduct and the subsequent prosecution: three days to speak with attorneys; four days to speak with representatives of People's Bank and law enforcement investigators; and eight days coming to court proceedings during the prosecution of the case. Brown also explained that he was seeking to recover only for a typical eight-hour workday, which at his normal rate of $55 per hour would be $440 per day. On cross-examination, Brown admitted that he had never actually lost any money he would have otherwise earned, because he made up his missed time by working weekends.

Based on Brown's testimony and the evidence concerning Jackson's finances, the trial court entered a restitution order requiring Jackson to pay Brown restitution

4

in the amount of $7,715.00. In calculating the amount of restitution owed, it appears the trial court awarded Brown $440 per day for a total of 16 eight-hour workdays (the fifteen missed days Brown testified to and an additional day for his attendance at the restitution hearing), as well as the $675.00 he spent on attorney fees.[2]

At the restitution hearing, the State bore the burden of proving, by a preponderance of the evidence, the amount of the damages suffered by Brown as a result of Jackson's criminal conduct. See *Austin v. State*, 315 Ga. App. 713, 713-714 (727 SE2d 535) (2012); OCGA § 17-14-7 (b). On appeal, Jackson argues that the State failed to prove that Brown suffered any damage other than the expenditure of $675 in attorney fees. Specifically, Jackson contends that because Brown testified that he made up his lost work time by working weekends, the State failed to prove that Brown actually suffered damages in the form of lost wages. We disagree.

Georgia law requires a trial judge, as part of the sentencing process, to "make a finding as to the amount of restitution due any victim and order an offender to make full restitution." OCGA § 17-14-3 (a). "The amount of restitution ordered shall not

---

[2] Brown's normal earnings of $440 a day multiplied by 16 equals $7,040. When the $675 in attorney fees is added to that amount, the total is $7,715.

exceed the victim's damages." OCGA § 17-14-9. See also *Cardwell v. State*, 225 Ga. App. 337, 338 (484 SE2d 38) (1997) ("[t]he maximum amount of restitution recoverable in a criminal case is that which would be recoverable in a civil action") (citations and punctuation omitted). For purposes of restitution, damages are defined as "all special damages which a victim could recover against an offender in a civil action, . . . based on the same act or acts for which the offender is sentenced, except punitive damages and damages for pain and suffering, mental anguish, or loss of consortium." OCGA § 17-14-2 (2). Under Georgia law, "[s]pecial damages are those which actually flow from a tortious act; they must be proved in order to be recovered." OCGA § 51-12-2 (b). And it is well established that lost wages are a form of special damages. See, e. g., *Central of Ga. R. Co. v. Carter*, 212 Ga. App. 528, 531 (4) (442 SE2d 269) (1994). Accordingly, a trial court may, in an appropriate case,

6

require an offender to compensate a victim for her lost wages,[3] provided the State presents evidence which allows the trial judge to "calculate the amount of the loss with a reasonable degree of certainty." *MCI Communications Svcs. v. CMES*, 291 Ga. 461, 463 (728 SE2d 649) (2012) (citations and punctuation omitted).

Here, Jackson does not challenge the evidence showing the amount of wages Brown earned in a typical work day. Nor does she dispute that Brown missed 15 days of work because of her crimes against him. Rather, she argues that the State failed to prove that Brown suffered any lost wages, given his testimony that he worked weekends to make up his lost work time during a given week. This argument,

[3] Because "[t]he restitution mechanism is an attempt to avoid the necessity of a separate civil action," "the statutory scheme requires the [trial] court to determine what type of civil action could be maintained by the victim, and to determine what the proper measure of damages would be in such a civil action." *Taylor v. State*, 295 Ga. App. 689, 691 (2) (673 SE2d 7) (2009) (citation and punctuation omitted). On appeal, the parties have not addressed what type of civil action Brown could have maintained against Jackson and what the appropriate measure of damages would be in such a case. Nor does it appear that the trial court addressed these questions directly. Given that neither party has disputed the proposition that Brown could maintain a civil action against Jackson for financial identity fraud or that lost wages would be an appropriate element of damages in such an action, we have assumed for purposes for this appeal that both of these propositions are true. See *Perez v. Atlanta Check Cashers*, 302 Ga. App. 864, 868 (692 SE2d 670) (2010) (indicating that an individual would have a cause of action for financial identity fraud);*Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703, 704-705 (1) (409 SE2d 835) (1991) (the tort of invasion of privacy includes "appropriation for the defendant's advantage, of the plaintiff's name . . . .") (punctuation and footnote omitted).

7

however, ignores relevant law as to the damages a tort victim may recover in a civil action.

Under Georgia law, where a victim has lost time from work as a result of the tortious conduct of another, the victim may recover lost wages even if a third party has already compensated the victim for that loss. See *Amalgamated Transit Union Local 1324 v. Roberts*, 263 Ga. 405, 406 (1) (434 SE2d 450) (1993) ("'[i]t is the tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives'"), quoting Restatement (Second) of Torts § 920A comment (b), p. 514. This rule results from the fact that "[t]he courts are concerned not only with compensation of the victim, but with admonition of the wrongdoer." Id. And if one party is going to receive a "windfall" as a result of third-party payments made to the victim, "it is usually considered more just that the injured person should profit, rather than let the wrongdoer be relieved of full responsibility for his wrongdoing." Id. at 407 (1) (citation and punctuation omitted). We find that this same rationale applies in restitution proceedings, which allow a victim to recover those special damages he could otherwise recover in a civil tort action. See OCGA

8

§ 17-14-2 (2).[4] Accordingly, the trial court did not err in requiring Jackson to make restitution to Brown for the work time he lost as a direct result of her criminal conduct towards him.[5] This would include the days that Brown spent away from work meeting with lawyers, the bank, and law enforcement authorities, as well as the days he spent testifying at the criminal proceedings brought against Jackson. And given Brown's testimony as to both the amount of time he lost from work and how much that time cost him, in terms of lost wages, a preponderance of the evidence supports the court's restitution award as to the 15 days of work Brown missed prior to the restitution hearing.

We further find, however, that the trial court erred in requiring Jackson to compensate Brown for the day he took away from work to appear at the restitution

---

[4] In reaching this conclusion, we note that restitution, like tort law, is designed both to compensate the victim and to deter wrongful conduct. See OCGA § 17-14-10 (a) (5) (in determining the nature and amount of restitution, a trial court must consider, inter alia, "[t]he goal of restitution to the victim and the goal of rehabilitation of the offender"); *Amalgamated Transit Union*, 263 Ga. at 406 (1) (holding tortfeasor's liable for their conduct creates "a strong incentive to prevent the occurrence of the harm") (citation and punctuation omitted).

[5] We emphasize that our holding in this case does not mean that a trial court is required to award a victim any or all of his lost wages in a restitution order. Rather, our holding means only that a trial court may properly consider evidence of any lost wages in determining the amount of restitution to be awarded.

hearing. As noted earlier, "[t]he restitution mechanism is an attempt to avoid the necessity of a separate civil action and to determine the amount of loss caused by the criminal act in the usually earlier criminal proceedings rather than in a second and more protracted civil suit. Consequently, the amount of restitution ordered may not" exceed those damages the victim could recover in a civil action. *Taylor*, 295 Ga. App. at 691 (2) (citation and punctuation omitted). We are aware of no law that would permit a civil litigant to recover for the time lost from work as a result of the litigant's prosecution of his civil lawsuit. Given this fact, we find that the trial court erred in awarding Brown the equivalent of a day's wages for the time he spent testifying at the restitution hearing. We therefore vacate the trial court's order and remand for entry of a new restitution order, consistent with this opinion.

*Judgment vacated and case remanded with direction. Andrews, P. J., concurs; Miller, J., concurs in judgment only.*