**FIFTH DIVISION**
**MILLER, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**November 2, 2020**

# In the Court of Appeals of Georgia

A20A1387. BETTIS v. THE STATE.

MILLER, Presiding Judge.

In this 2015 retrial case,[1] a Richmond County jury found Roger Bettis guilty of two counts of aggravated assault, one count of criminal attempt to commit rape, one count of kidnapping, and one count of possession of a knife during the commission of a crime, and the trial court sentenced Bettis to 95 years' imprisonment. Bettis appeals from the denial of his motion for new trial, arguing that (1) the trial court violated his confrontation rights by admitting an expert witness' out-of-court

---

[1] A jury initially found Bettis guilty of two counts of aggravated assault, one count of criminal attempt to commit rape, one count of kidnapping, and one count of possession of a knife during the commission of a crime, but this Court reversed Bettis' convictions and remanded the case for a new trial because the trial court failed hold a hearing before denying Bettis' request to represent himself at trial. *Bettis v. State*, 328 Ga. App. 167, 169-170 (1) (761 SE2d 570) (2014).

statements and test results; (2) the evidence was insufficient to support his kidnapping conviction; and (3) the trial court denied him the opportunity to be present at sentencing. For the reasons that follow, we affirm Bettis' convictions, but we vacate his sentence and remand for resentencing.

Viewed in the light most favorable to the jury's verdicts,[2] the evidence adduced at trial showed that on June 3, 2009, Martha Seago was visiting her husband who was hospitalized at a local hospital when she decided to use the restroom. As Seago used the restroom in the first stall, someone entered the restroom and went into the stall next to her. Seago leaned down to look under the stall to ensure that the person was a woman and saw that the person was wearing shoes that did not appear to be women's shoes. Seago testified that the shoes were "real big" and appeared to be black tennis shoes. When Seago again leaned down to look under the stall, she began to panic after noticing that the person had left the stall. A man then came over the top of the stall, got on top of Seago, put his arm around her, and began to choke her until she passed out. Seago later awoke to discover that she had been lying on the floor and that the lower half of her body was unclothed. As a result of the attack, Seago lost four teeth, her jaw was dislocated, and she sustained trauma to her neck which

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

required her to undergo multiple surgeries. Seago sustained lacerations to her lip and above one of her eyes, and she also sustained bruises over her body. Seago testified that she did not see her attacker's face, but she described him as a black male.

Following Seago's attack that day, Tammie Kates, who had been at the same hospital as Seago, went to the restroom to get a paper towel. After entering the restroom, Kates heard "a moaning noise" and walked to the corner of the restroom and met a man "face to face," whom she identified as Bettis. When Kates began to retreat, Bettis reached around her and held the bathroom door shut so that she could not leave. Kates began to scream, and Bettis brandished a knife and told her to stop screaming or else he would cut and kill her. Bettis then directed Kates to the last stall in the bathroom and held the knife towards her as he followed her to the stall. After reaching the stall, Bettis told Kates to shut the door of the stall. After a few minutes, Kates called out to Bettis and asked whether she could come out of the stall but she did not get a response. Kates then exited the stall and looked toward the first stall and saw a person and blood on the floor, and then she ran to get help for Seago.

An officer with the Richmond County Sheriff's Office responded to the scene and observed bloody toilet tissue in the doorway to the restroom where Seago was

3

attacked. The officer observed more bloody tissue at the entrance of the first stall, and he also observed blood smears on the floor, on the wall, and on the toilet tissue dispenser. A wet, bloody rag was also found on the floor near the front of the stall, and more wet tissue was found on top of the toilet bowl along with white underwear found underneath the toilet bowl. Hair was also found on the toilet and the floor. A security operations supervisor at the hospital extracted photographs and video footage from the hospital's security systems that depicted the suspect walking around inside the hospital.[3] An investigator from the Richmond County Sheriff's Office obtained the footage, distributed the footage to the media, and Bettis was later determined to be a suspect in the crimes.

Linda Bettis, Bettis' mother, testified that Bettis was staying with her in June 2009, and that her daughter called her and told her to turn on her television. When she turned on her television, she saw images of someone who looked liked Bettis walking down the hallway of the hospital. Linda also received phone calls from other family members and non-family members telling her that they had seen Bettis on television

---

[3] The photographs and video footage were entered into evidence and displayed to the jury.

following the attack. The police later came to Linda's home and took some of Bettis' clothing for forensic testing.

Cynthia Seguin, an assistant manager for the forensic biology section of the Georgia Bureau of Investigation ("GBI"), testified that she had worked with Connie Pickens in GBI's forensic biology section prior to Pickens' death in 2014 and that she had conducted peer reviews of Pickens' test results and conclusions pertaining to the clothing retrieved from Linda's home. During Seguin's testimony, she was given a copy of the transcript of Pickens' testimony at Bettis' 2010 trial, and she read Pickens' testimony from that trial to the jury. The testimony revealed that Pickens conducted testing on Bettis' shorts, and that DNA found on the shorts matched Seago's DNA. Seguin also testified that she was the peer-reviewer for Pickens' work in Bettis' case and that she also agreed with Pickens' conclusion.

Bettis was subsequently indicted on two counts of aggravated assault (OCGA § 16-5-21), one count of criminal attempt to commit rape (OCGA § 16-4-1), one count of kidnapping (OCGA § 16-5-40), and one count of possession of a knife during the commission of a crime (OCGA § 16-11-106). Bettis elected to represent himself at his retrial and the trial court appointed standby counsel to assist Bettis. After the retrial, a jury again convicted Bettis on all counts, and the trial court

5

sentenced him to 95 years' imprisonment. Bettis filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. First, Bettis argues that the trial court violated his confrontation rights by admitting Pickens' testimony from Bettis' 2010 trial into evidence at trial. We conclude that, even if the trial court erred in admitting this evidence, Bettis cannot show that he is entitled to any relief on this claim.

As a preliminary matter, we note the parties dispute whether this issue was preserved for appellate review. Pretermitting whether Bettis' objection was preserved, we determine that even if this issue had been preserved for appellate review and the trial court erred in admitting Pickens' testimony, Bettis cannot show harmful error. See *McCord v. State*, 305 Ga. 318, 321 (2) (a) (825 SE2d 122) (2019) ("[A]lthough the admission of evidence in violation of the Confrontation Clause is error of constitutional magnitude, it can be harmless error if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict, such as when the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming.") (citation and punctuation omitted). During trial, Seguin testified that she peer-reviewed Pickens' work in Bettis' case. Seguin described the peer review process as follows:

[W]hen a scientist is completed with their testing and they have issued a report that case is assigned to another qualified scientist which means they have to be qualified to do the exact same testing and be experts in their field as well. They will review all of the notes that the other scientist, the original working scientist performed, to make sure that all steps were done correctly and within policy. And they will review the report and conclusions that were generated from that initial[] scientist. They then have to agree with those reports, those results, in order to release the reports to the customers.

Seguin further testified that she reviewed all of Pickens' notes and results from the testing that was conducted in Bettis' case and that she "independently" agreed with Pickens' conclusions. Specifically, Seguin testified that, in order for her to conclude that the DNA on Bettis' clothing matched Seago's DNA, the DNA on Bettis clothing would have to match all of the places on Seago's DNA profile and that the match between the DNA on Bettis' clothing and Seago's DNA was a "perfect match." Although Bettis briefly mentions Seguin's testimony in his brief, he does not otherwise challenge the admission of Seguin's testimony on appeal.[4] Therefore, even

---

[4] Notably, even if Bettis had challenged the admission of Seguin's testimony on appeal, such a challenge would not be successful. See *Sanchious v. State*, 351 Ga. App. 611, 615-616 (1) (b) (831 SE2d 843) (2019) (holding that a forensic biologist's testimony that she peer-reviewed another analyst's work to ensure that the procedures were followed and that she independently agreed with the analyst's conclusion was admissible at trial); *Thomas v. State*, 342 Ga. App. 310, 314 (2) (803 SE2d 131)

if the trial court erred in admitting Pickens' 2010 trial testimony, the testimony was merely cumulative of Seguin's testimony, and thus Bettis cannot show any harm from the trial court's alleged error in admitting Pickens' testimony. See *McCord*, supra, 305 Ga. at 322 (2) (a) (i) (holding that the defendant could not show harmful error from the Confrontation Clause violation where the evidence was cumulative of the other evidence admitted at trial). Accordingly, Bettis is not entitled to any relief on this claim.

2. Next, Bettis argues that the evidence was insufficient to sustain his kidnapping conviction because the State failed to show sufficient evidence of asportation as to Kates. We disagree and conclude that the evidence was sufficient to show asportation to sustain Bettis' kidnapping conviction.[5]

---

(2017) (affirming the admissibility of the testimony from a second chemist who did not perform the drug test but independently agreed with the conclusion of the first chemist who was unavailable to testify at trial).

[5] In Bettis' first appeal, we determined that the evidence was sufficient to sustain each of his convictions. See *Bettis*, supra, 328 Ga. App. at 171 (2). Because we remanded Bettis' case for a new trial which resulted in a new evidentiary record, we will address this enumeration of error. See *Welbon v. State*, 304 Ga. 729, 729-730 (1) (822 SE2d 277) (2018) (explaining that when an appellate court determines that the evidence is sufficient to sustain a conviction but the case is remanded for other reasons, the sufficiency of the evidence may not be raised in a second appeal unless a new trial is held).

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. An appellate court neither weighs the evidence nor determines witness credibility, but rather determines only whether the evidence was sufficient for a rational trier of fact to find the essential elements of the charged offense beyond a reasonable doubt. Conflicts in the testimony of witnesses, including those of the State, raise questions of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to prove the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) *Rivera v. State*, 293 Ga. App. 215 (666 SE2d 739) (2008). "A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." OCGA § 16-5-40 (a) (2009). In *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), the Supreme Court of Georgia articulated four factors for assessing the asportation element of the kidnapping statute[6] to determine whether the movement in question serves to isolate the victim from protection or rescue, which can sustain a kidnapping conviction, or is merely attendant to some

---

[6] "Although the standard set forth in Garza has since been superseded by statute . . . it was the standard applicable at the time of [Bettis'] 2009 conviction." *Hyden v. State*, ___ Ga. ___ (1) (839 SE2d 506) (2020).

other charged crime. Id. at 702 (1). Those four factors are: "(1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense." (Citation omitted.) Id. A reviewing court need not find that all of these factors have been met in order to conclude that there is sufficient evidence showing asportation. *Chatman v. Brown*, 291 Ga. 785, 787 (1) (733 SE2d 712) (2012).

Here, the evidence showed that after Kates entered the restroom and encountered Bettis, Bettis reached around Kates and held the bathroom door shut as she tried to exit the restroom. Kates testified that Bettis then brandished a knife and threatened to cut and kill her. Kates further testified that Bettis then made her walk into a stall inside the bathroom while still holding the knife and that he instructed her to close the door to the stall. Although the record does not indicate the duration of the movements, we conclude that Bettis' action of directing Kates from the bathroom door to a bathroom stall by knifepoint was sufficient to establish the asportation element of kidnapping under *Garza*. See *Baxter v. State*, 329 Ga. App. 589, 595-596 (4) (765 SE2d 738) (2014) (asportation element of kidnapping was satisfied where

10

the defendant raped the victim on her couch and then made the victim go to her bathroom and take a shower); *Williams v. State*, 307 Ga. App. 675, 676-678 (1) (705 SE2d 906) (2011) (evidence sufficient to show the asportation element of kidnapping where the defendant moved the victim at gunpoint inside a hotel room to the bathroom within the hotel room). Also, contrary to Bettis' claim, the movement was not an inherent part of the aggravated assault offense. "An aggravated assault occurs when a person assaults with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." (Citation and punctuation omitted). *Williams*, supra, 307 Ga. App. at 678 (1). Thus, the aggravated assault was completed when Bettis brandished the knife and threatened to "cut and kill" Kates after she entered the restroom. The movement occurred after Bettis brandished the knife and threatened to cut and kill Kates. See id. (holding that the movement was not an inherent part of the defendant's aggravated assault conviction where the defendant pointed the gun at the victim and grabbed her by the neck before forcing the victim into the bathroom). We further reject Bettis' claim that his actions of forcing Kates into the bathroom stall exposed her to less danger. "[M]oving [Kates] into the bathroom [stall] placed her in a more dangerous situation because isolating her made it easier for

11

[Bettis] to maintain control over her and made it impossible for her to call for help." (Citation and punctuation omitted.) *Baxter*, supra, 329 Ga. App. at 595 (4). Accordingly, we conclude that this evidence was sufficient to show asportation, and the evidence was therefore sufficient to sustain Bettis' kidnapping conviction.

3. Lastly, Bettis argues that the trial court erred in denying him the opportunity to be present at sentencing when he requested to be brought back to the courtroom for the pronouncement of his sentence. We agree that the trial court violated Bettis' constitutional rights when it failed to allow Bettis to be present for the pronouncement of his sentence.

A trial court's ruling that a defendant waived his or her right to be present during a critical stage of the trial will be affirmed if there is any evidence to support the ruling. See *Cesari v. State*, 334 Ga. App. 605, 609 (1) (780 SE2d 56) (2015) ("We will affirm a trial court's finding of a waiver [of the right to be present during a critical stage of the trial] if any evidence supports it.").

"Embodied in the constitutional right to the courts under Art. I, Sec. I, Par. XII of the Georgia Constitution of 1983 is the right of the criminal defendant to be present at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure." (Citation and

punctuation omitted.) *Lyde v. State*, 311 Ga. App. 512, 513 (1) (716 SE2d 572) (2011). "[S]entencing is a critical stage at which a defendant is generally entitled to be present under the Georgia Constiution." (Citation and punctuation omitted.) *Taylor v. State*, 295 Ga. App. 689, 690 (1) (673 SE2d 7) (2009). Thus, a trial court violates these constitutional rights unless the defendant validly waives his right to be present, and the "violation of [his] right to be present which is presumed prejudicial . . . is not subject to a harmless error analysis under Georgia law." (Citation omitted.) Id. While we have noted that "a trial court is not required to make moment-by-moment inquiries as to whether a defendant who voluntarily absented himself later wishes to [be] present[,] . . . we cannot say that a nondisruptive defendant who voluntarily absents himself for a time may never regain his right to be present." (Citations, punctuation, and emphasis omitted.) *Cesari*, supra, 334 Ga. App. at 609 (1).

Here, the following colloquy occurred between Bettis and the trial court at the beginning of sentencing prior to the trial court taking testimony from witnesses:

[BETTIS]: Judge Brown, have I got to be in here for this?

THE COURT: I'm sorry.

13

[BETTIS]: Have I got to be in here for this? I mean I don't want to hear nothing they got to say.

THE COURT: All right. It's your sentencing. If you elect to --

[BETTIS]: I understand. *Bring me back here and give me the digits*. I don't want to hear nothing they got to say.

(Emphasis supplied.) After Bettis was removed from the courtroom, the trial court ruled that Bettis had waived his right to be present for sentencing and sentenced Bettis to 95 years' imprisonment. At the hearing for his motion for new trial, Bettis confirmed that when he told the trial court, "bring me back here and give me the digits," he meant that he did not want to be in the courtroom while the victims and their family members testified but that he wanted to be present when the sentence was pronounced.

We conclude that the trial court denied Bettis his right to be present for the portion of the sentencing hearing where the trial court pronounced its sentence. As reflected in the colloquy above, Bettis chose to waive his right to be present only during the evidentiary portion of his sentencing hearing but desired to be present when his sentence was pronounced. Specifically, Bettis told the trial court, "bring me

14

back here and give me the digits."[7] Because Bettis was absent for a critical part of his sentencing for which he specifically requested to be present, we vacate Bettis' sentence and remand the case for resentencing. See *Taylor*, supra, 295 Ga. App. at 690 (1) (vacating the defendant's sentence and remanding for resentencing where the defendant was not present in the courtroom when the trial court pronounced her sentence).

Accordingly, for the reasons stated above, we affirm Bettis' convictions but we vacate his sentence and remand the case for resentencing.

*Judgment affirmed in part, vacated in part, and case remanded for resentencing. Markle and Colvin, JJ., concur.*

---

[7] The State's reliance on *Worthen v. State*, 342 Ga. App. 612 (804 SE2d 139) (2017), is greatly misplaced because although the defendant absented himself from a portion of the proceedings in that case, the defendant never sought to regain his right to be present during the remainder of the proceedings. Id. at 612-613 (1). Thus, *Worthen* is distinguishable and does not compel a different result here.